## Walker v. Hester.

(Decided December 11, 1917.)

## Appeal from Henderson Circuit Court.

Evidence—Declarations of Party Litigant—When Incompetent Because Self-Serving.—Where a witness on his examination in chief related a declaration by the defendant which was against his interest, it was incompetent to allow him to testify as to a declaration made at another time and place by the defendant which was contradictory of his first declaration and favorable to his interest, although if both of the declarations had been made at the same time and in the same conversation, both would have been admissible.

HENSON & TAYLOR for appellant.

VANCE & HEILBRONNER and DORSEY & DORSEY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Hester, a widower, brought suit against the appellant, Ara Belle Walker, a widow, to recover $1,536.00 that he alleged he advanced to her under an agreement that she would marry him, averring that after receiving the money she refused to do so.

The answer denied all the material averments in the petition, but on a trial before a jury there was a verdict for Hester, and Mrs. Walker appeals.

In his evidence Hester said, in substance, that he had been paying matrimonial attentions to Mrs. Walker for about a year previous to July 28, 1914; that she told him that if he would advance her about fifteen hundred dollars to buy the interest of her sons in a tract of land, she would marry him; that the matter was discussed between them a number of times and finally he agreed to and did on the 28th of July, 1914, advance to her $1,536.00; that no person was present when the money was paid to her, and it was agreed between them that the transaction would be kept a secret if possible; that when he gave to her the money on this day she agreed to meet him at the depot in Henderson, Ky., at which place, or on a little trip they contemplated taking together from there, they would make all arrangements about when and where they were to be married; that after Mrs. Walker got his money, in place of meeting him at the depot as she had agreed to do, she got on the

train and went to Hot Springs, Ark., and he did not see her for several weeks; that she refused to return him any of the money or marry him.

Mrs. Walker in her evidence denied practically every statement made by Hester; indeed, it is seldom that we find a record in which the testimony is so contradictory as that of Hester and Mrs. Walker.

It is insisted that the trial court should have directed a verdict in favor of Mrs. Walker, because, as it is argued, there was no evidence for Hester that he ever requested Mrs. Walker to fulfill her alleged promise to marry him or evidence that she refused to marry him.

We do not agree with counsel in this construction of the evidence of Hester. On the contrary, we think it shows with sufficient clearness to sustain the averments of the petition that he advanced her the money under an agreement that she would marry him, and that after getting his money, she refused to marry him, although he was able, willing and ready to consummate the contract.

On the trial T. M. Hankins, a witness for Hester, was asked if he had ever read a letter written by Mrs. Walker, when she was at Hot Springs, to her son who lived in Henderson county, and he said he had read such a letter and that it was signed by Mrs. Walker, but that he did not know where it was at the time of the trial, as her son, to whom it was written, was then dead; that in the letter, in which she mentioned a number of things, she said to her son: "You see Brother Greep and find out how Sank is taking it"; that Greep was a preacher living in the neighborhood and Sank was the name Hester was commonly called.

No question seems to be raised about the authenticity of the letter or about the fact that Hankins read it, but it is said that as Mrs. Walker was not given notice to produce the letter, Hankins should not have been allowed to testify as to its contents.

We find no merit in this contention. If Mrs. Walker had the letter and Hankins did not testify correctly as to its contents, she could easily have produced it. In addition to this, Mrs. Walker testified that she did write a letter to her son in which she told him, in substance, to find out how Hester "was taking me going away."

It is also suggested, but not pressed, that error was committed in permitting S. O. Heilbronner to testify as to the condition of Mrs. Walker's account at the

Sebree National Bank by reading from a pass-book that Mrs. Walker in her evidence identified as hers.

We find no error in the manner in which the contents of this pass-book were brought to the attention of the jury.

Mrs. Walker introduced as a witness in her behalf one, H. H. Sights, who testified that in the fall of 1914 he was teasing Hester about the incident and Hester said that "she did not get any of his money." On cross-examination by the attorney for Hester he was asked if Hester did not tell him later that she had gotten it, and, over the objection of counsel for Mrs. Walker, he was permitted to answer and said: "Well, later on, I don't know how long after that, I was talking with Mr. Hester and he admitted that he gave the money to her and said that he had given her $1,650.00." It is now insisted that the court committed error in permitting Sights to relate the conversation in which Hester told him he had let Mrs. Walker have the money, because it is said this was a self-serving declaration.

It will be observed that Sights was introduced as a witness for Mrs. Walker and on his examination in chief said that Hester told him he did not let her have any money, but on his cross-examination it was drawn out of him that after this he had another conversation with Hester in which Hester told him he let her have $1,650.00. Of course, if these contradictory statements had been made at the same time or as a part of the same conversation, there could be no doubt about the competency of the statement objected to. But as the declaration of Hester, that he let her have the money, was made at a different time and not as a part of the conversation in which he said he did not let her have any money, we are inclined to think that it was incompetent because a self-serving declaration, but the error in its admission was clearly not prejudicial as it was only a repetition of what Hester said on the witness stand a number of times.

The petition alleged that Hester advanced Mrs. Walker the money on July 28, 1914, while the court instructed the jury that if they believed the transaction took place "on or about July 28, 1914," they should find for Hester. The instruction is criticized because it did not specify July 28th as the day on which the money was advanced; but we do not see any substance in this contention.

It is further complained that the court committed error in failing to give an instruction offered by counsel for Mrs. Walker, telling the jury, in substance, that they could not find for Hester unless they believed from the evidence that Mrs. Walker failed and refused to carry out the contract of marriage, if any there was. In the instruction given by the court the jury were told that they might find for Hester if they believed that Mrs. Walker promised to marry him and in consideration thereof Hester let her have money, but did not advise the jury that they should find against Hester unless they believed that Mrs. Walker failed and refused to marry him. The argument in support of this contention is that Hester's cause of action was rested on the ground that in consideration of the agreement of Mrs. Walker to become his wife and as an inducement thereto, he advanced her $1,536.00, and that after getting the money she refused to become his wife and also refused to return to him the money that he had advanced to her, and, therefore, it is said that there should not have been a recovery in favor of Hester unless the jury found, under an instruction submitting the question, that Mrs. Walker refused to perform her contract by marrying him.

There would be considerable force in this contention except for the fact that Mrs. Walker, when testifying in her own behalf, expressly denied that she had ever agreed to marry Hester, or that she had received from him at any time or in any manner any sum of money whatever. And further, that she had never had any idea of marrying him and would not marry him.

In view of this testimony of Mrs. Walker, it seems clear that the only real matter in issue was whether Hester advanced to her the money upon her promise to marry him and whether after her failure to perform the contract, she refused to return the money. Upon this issue Hester, as we have said, testified, in substance, that he did let Mrs. Walker have the money upon her promise to marry him, and that after getting the money she would not marry him and would not return the money; while, on the other hand, Mrs. Walker denied that she had received any money from him or that she had promised to marry him, and of course according to her contention she did not break any contract that she had made with him.

The issue between these parties was very simple and depended altogether on whether Hester or Mrs. Walker was testifying to the truth. On this disputed issue of fact the jury saw proper to accept the statements of Hester, and we are not disposed to disturb their finding.

Complaint is also made of the argument of counsel for Hester, but we find no reversible error in this respect.

The judgment is affirmed.