## Norfolk & W. Ry. Co. v. Hensley's Adm'r.

(Decided Jan. 9, 1934.)

WILLIAM R. McCOY, F. M. FIVINUS and HOLT & HOLT for appellant.

J. B. CLARK and A. J. KIRK for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Sam Hensley, administrator of the estate of John Hensley, deceased, has recovered judgment in the Martin circuit court against the Norfolk & Western Railway Company for $1,600 damages for the death of his intestate alleged to have been caused by the negligent operation of one of the company's engines or trains and the latter is appealing.

The accident occurred at or near a point where a public road crosses appellant's tracks at Stonecoal in Wayne county, W. Va. There are seven tracks in appellant's yards and at Stonecoal these tracks parallel Tug river. U. S. highway No. 52 lies between the tracks and the river. Nearest the highway is the track for east-bound trains, next to it is the east-bound passing siding, then two storage tracks, then the west-bound passing siding, and north of it, the track for west-bound trains. A county road leaving highway 52 crosses these tracks at right angles and east of this crossing is another track known as the hot box track.

About 12 o'clock on the night of September 19, 1931, a west-bound coal train pulled into the west-bound passing siding for the purpose of permitting the passing of a west-bound passenger train. Before reaching the crossing, the headlights of the engine revealed the body of deceased between the rails of the main west-bound tracks. One of appellant's surgeons was immediately summoned, and, at his direction, the injured man was placed upon the passenger train and taken to a hospital at Kenova, W. Va., where he died the following day.

Leonard Spalding, Joe Spalding, and Lee Parsley testified that they were in an automobile at the point where the county road leaves highway 52 about 9 o'clock and saw and talked with deceased; that they asked him if he had any liquor and he told them he might be able to find some; that when he left them he started across the tracks, but an east-bound train cut off their view and they saw nothing more of him. There is a standpipe where engines take water a short distance west of the crossing and next to the west-bound track. Two of these witnesses testified that about time the train passed they saw or heard another engine at the standpipe. Lee Marcum, Van Marcum, and Alex Sammons testified that they and Erma Marcum caught a freight train at tunnel No. 4, 4 or 5 miles from the crossing, intending to go to a dance at Sand Bar, but that the train was running so rapidly they were unable to get off and were carried on to Williamson, W. Va. They were five or six cars back of the engine, and, when the train reached the yards at Stonecoal, they saw a loose engine and tender on another track backing in the same direction they were going strike a man who was standing on the

road crossing and hurtle him through the air. They did not see where he fell. They all testified that there were no lights on this engine or tender and that they did not hear a bell or whistle sound. Sam Hensley testified that he measured the distance from the crossing to where the body was found and that by his measurement it was 234 feet, however, a number of witnesses for appellant estimated the distance to be greater. T. H. Vance, car inspector employed by appellant who lives in one of its houses on the north side of the yard at Stonecoal several hundred feet east of the crossing, testified that he saw and talked to John Hensley at his home about 10 or 10:30 the night he was killed; that he sat on the porch and talked with him for an hour or more; that when Hensley left he started toward the crossing walking on the path over from the hot box track; and that he warned him to be careful. He and a number of other witnesses introduced by appellant testified that they saw marks, blood, and hair on thirteen or fourteen ties east of where the body was found.

In rebuttal, Sam Hensley testified that on the night of the accident Dallis Sammons, an employee of and witness for appellant, pointed out to him the place where the body was found and said something about blood and hair on the ties, but, on account of the darkness, he was unable to see; that he returned after daylight and found blood on the ties west of where the body was found, but that he examined the ties east of that point and found no blood.

As grounds for reversal it is argued (1) that the court erred in overruling appellant's motion for a peremptory instruction and (2) that the court erred in refusing to give instruction A offered by appellant. Counsel for appellant do not argue that there is no evidence supporting appellee's theory of the case, but do most earnestly insist that the physical facts, as shown by the proof, are wholly at variance with the proof offered by appellee and demonstrate beyond question that the accident did not and could not have occurred at the crossing.

The evidence of a number of witnesses for appellant that blood and other signs were observed on ties east of where the body was found is the basis for this argument, however, counsel overlook the fact that there is a conflict of evidence on this point since Sam Hensley testified that he went to the scene the day following the

accident, and, having been told of the signs on ties east of where the body was found, made an examination but found none, but did find blood on the ties west of the place where the body was discovered.

While evidence wholly at variance with universally recognized physical laws is of little probative value and may not constitute a compliance with the scintilla rule so as to authorize the submission of a case to a jury (Louisville & N. Ry. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471), yet an issue is made for the jury where, as in this instance, there is a conflict in evidence with respect to the physical facts. The appellate court is not authorized to set aside a verdict where there is a conflict in evidence merely because a greater number of witnesses have testified to facts contrary to the verdict than have testified to facts tending to support it, since, it is peculiarly the province of the jury to reconcile contradictions found in evidence and to believe one witness or witnesses and disregard that of others. Morton v. Sanders, 178 Ky. 836, 200 S. W. 24; Walker v. Hester, 178 Ky. 342, 198 S. W. 912; Security Finance Co. v. A. L. Cook & Son, 223 Ky. 124, 3 S. W. (2d) 187; Bobich v. Dackow, 229 Ky. 830, 18 S. W. (2d) 280.

While a number of witnesses testified to physical facts which strongly tend to establish that deceased was not struck at the crossing, one witness testified to an entirely different state of facts; and three witnesses testified that they saw a man standing on the crossing struck by one of appellant's engines and knocked in the direction where deceased's body was found. In such circumstances it is apparent that an issue was made for the jury and this court would not be authorized to disturb the verdict based thereon as palpably and flagrantly against the evidence.

In paragraph 4 of its answer, appellant pleaded the law of West Virginia as announced in the case of Spicer v. C. & O. Ry. Co., 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385, wherein it is held in effect that a person using a railroad track as a footpath for his own convenience elsewhere than at a lawful crossing, and is injured by a train in so doing, cannot recover damages of the railroad company, unless it be guilty of wanton or gross negligence. By agreement of parties, that opinion of the West Virginia court was considered as

read in evidence. It is argued by counsel that under the pleading and proof the court committed reversible error in not giving instruction A offered by appellant which reads:

"The Court instructs the jury that if they believe and find from the evidence that the death complained of resulted from an injury received in Wayne County, West Virginia, and that the decedent, John Hensley, was using the railroad track as a foot-path for his own convenience elsewhere than at a lawful crossing, and was injured by a train while so doing, that plaintiff cannot recover damages of the defendant unless it be shown that it was guilty of wanton and gross negligence, and the jury should so find."

As has already been indicated, the evidence of a number of witnesses for appellant conduces to sustain appellant's theory that, if deceased was, in fact, struck by one of its engines or trains, it was at a point other than the public road crossing. On the other hand, there is, in addition to the evidence of one witness that he made observations and found none of the conditions testified to by appellant's witnesses, the uncontradicted evidence of three witnesses who testified that on the night of the accident they saw a man struck by one of appellant's engines on the public crossing. Three other witnesses testified that on the night of the accident they saw John Hensley start across appellant's tracks at the crossing, and, when he was about half way across, a train passing over the tracks next to them cut off their view and the evidence of at least two of these witnesses indicates there was an engine being operated on some other track in the yard. So, it will be seen that these two sets of witnesses for appellee in a measure corroborate each other, and indicate that John Hensley was struck in the early part of the night while passing over the regular crossing and was knocked to a point westward where he was later found by appellant's employees.

Under the instruction given by the court, the jury was authorized to find for appellee if they believed from the evidence that appellant's "agents and employees carelessly and negligently ran its engine against and over plaintiff's decedent at and on a public road crossing," and directed to find for appellant if they did not

so believe. Guided by this instruction the jury could not have found for appellee if they believed from the evidence that appellee's decedent was struck and injured at a place other than a public crossing. From a consideration of the entire record, it is therefore manifest that the result would have been the same if the instruction offered by appellant had been given. This court is not authorized to reverse a judgment because of error in instruction or other error unless it is affirmatively made to appear that the substantial rights of the complaining party were prejudiced thereby. Civil Code of Practice secs. 134, 338, and 756. Codell Construction Co. v. Steele, 247 Ky. 173, 56 S. W. (2d) 955.

It is therefore unnecessary to determine whether the court erred in refusing to give the offered instruction, since the conclusion is inevitable that the error, if any, was not prejudicial.

Judgment affirmed.