## Schultz v. Duitz.

(Decided Feb. 27, 1934.)

W. A. ARMSTRONG for appellant.

R. D. McAFEE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

There is involved on this motion for an appeal, one diamond ring of the value of $450. The sum involved

is below the appealable sum as a matter of right, but because the fact that it presents a rather new question for the Kentucky courts, we deem it proper to write an opinion enunciating the law of the case.

Carl Schultz, appellant herein, and Clara Duitz, appellee, in November, 1929, became engaged to be married. Shortly thereafter, pursuant to a custom, the origin of which the memory of man runneth not, appellant presented and gave to appellee the diamond ring here in question. The engagement continued until in August, 1931, when appellant notified appellee of his unwillingness to marry and breached the contract.

The facts were agreed on and stipulated of record as follows:

"* * * 1. That the defendant, Carl Schultz, on or about the 26th day of November, 1929, gave to the plaintiff, Clara Duitz, an engagement ring, the subject matter of this action, in consideration of her promise to marry him; that at the same time each agreed and promised to marry the other.

"2. That the said engagement continued until or about August 21st, 1931, when the defendant notified plaintiff of his unwillingness to perform his part of the contract; refused then and there to marry this plaintiff and has continued to refuse to do so.

"3. That between the dates of August 21st, 1931, and September 8th, 1932, the defendant took possession of the ring under the following circumstances:

"On that date the parties hereto went to Oldham County, Kentucky, to hunt squirrels. While sitting under a tree, the plaintiff took said ring off her finger and defendant took it from her hand and put it in his pocket; that plaintiff demanded that defendant return the ring to her possession, but that he refused and continues to refuse to do so.

"Plaintiff has brought this action for the recovery of said ring."

The case was submitted to the trial court upon the above agreed stipulated facts and the court found and adjudged appellee to be the owner of and entitled to the possession of the ring and recover it of defendant if it

was to be had, and, if not, she would recover of him the sum of $450, the value of the ring. From that judgment, this appeal is prayed.

It is argued for appellant as ground for reversal that the ring was given appellee as an engagement ring and was therefore a conditional gift, and the condition or consideration having failed, the gift was thereby revoked and appellant entitled to a return of the ring.

Appellant cites various authorities which he argues support his contentions and theory of the case. But an analysis of the cases relied on by appellant discloses that the facts involved therein are not the same as are involved in the case at bar. Appellant especially relies upon the case of Walter v. Moore, 198 Ky. 744, 249 S. W. 1041, 1042. The facts of that case were, in substance, that the husband had given the wife an engagement ring and a brooch previous to their marriage, which was consummated in 1914. Subsequently they were divorced. In 1919, the divorced husband brought an action against his former wife, alleging that previous to their marriage, and solely in consideration thereof, the defendant (his former wife) obtained from him the ring and brooch and had failed and refused to restore same to him. It developed on the trial that he had given her the ring as an engagement ring and she accepted it as such and wore it as a symbol or token of the relationship which they had voluntarily assumed toward each other. But the brooch had been given her prior to their engagement and before any contract or agreement of marriage existed between them. He was denied his claim for the brooch for reason that it was a gift by him to her previous to their engagement and was not in consideration of the marriage agreement. But it was held that he was enittled to a return of the ring because it was given by him and received by her in consideration of marriage and that he was entitled to a return of it under Kentucky Statutes, sec. 2121, entitling each party, upon final judgment of divorce, to a return of property received before or during the marriage in consideration thereof.

In the opinion, among other things, the court said: "And, however much it may grate upon one's sensibilities to enforce such a right as is here asserted, the plain legislative purpose, clearly evidenced in the statute, is not to be denied."

Thus, very obviously, the relief was granted because the legislative purpose of the statute, supra, demanded it. This statute deals with the property rights of people who have been married and subsequently divorced. It must be construed according to its legislative intent and purpose and cannot be enlarged upon so as to make it applicable to the property rights of parties not included therein. The restricted construction of this statute is further indicated in the case of Lewis v. Lewis, 196 Ky. 701, 245 S. W. 509, 510. In that case the circuit court attempted a settlement of the property rights of parties upon a judgment merely divorcing them from bed and board. This court said:

> " 'This was error for the reason that the divorce was merely from bed and board, and it is only in cases of absolute divorce that such an order or restoration is authorized by the statute and Code.'

> * * * This power is statutory only."

See, also, La Warre v. La Warre, 208 Ky. 566, 271 S. W. 660, and Hoagland v. Hoagland, 218 Ky. 636, 291 S. W. 1044.

Appellant further cites and quotes from the case of Wardlaw v. Conrad, 18 La. App. 387, 137 So. 603, as follows:

> "Where contemplated marriage did not take place, engagement ring could be recovered because of failure of consideration."

But this case was decided under the Civil Code La. art. 1740, which reads as follows:

> "Every donation made in favor of marriage falls, if the marriage does not take place."

This article of the Louisiana Code is founded under the chapter of the Code (chapter 8) entitled "Of Donations Made by Marriage Contract to the Husband or Wife," and is a literal translation of the Code Napoleon. French commentators, however, have construed the article to apply not only to gifts by marriage contract but also to prenuptial gifts when presented by one contracting party to the other. That Code further (article 1897) provides:

> "A gift in consideration of a future marriage is void by this rule, if the marriage do not take place."

Thus it will be noticed that the case was decided by

force of the legislative provisions of the Code in force in that state, as was the Kentucky case, Walter v. Moore, supra, decided under the provisions of the Kentucky Statutes. The case of Williamson v. Johnson, 62 Vt. 378, 20 A. 279, 9 L. R. A. 277, 22 Am. St. Rep. 117, is a case where a man sent money to his intended bride to purchase clothes for herself and to provide means for transportation to the place of the proposed wedding. The girl failed to appear at the designated place where the marriage was to be consummated and broke the engagement. The court permitted the man to recover the money he had advanced, upon the theory that the girl, the donee, did not use the money for the purpose intended and breached the marriage contract.

In the case of Walker v. Hester, 178 Ky. 342, 198 S. W. 912, Hester advanced to Mrs. Walker certain sums of money upon her promise to marry him. No marriage was ever consummated and Hester brought suit against Mrs. Walker for recovery of the money. Mrs. Walker denied that she had received any money from him or that she had promised to marry him. Hester testified to the contrary. The issue was tried by jury and the jury found in favor of Hester. It was held that Hester was entitled to recover of Mrs. Walker, the donee, because she had breached the contract of marriage. In 28 C. J., sec. 48, page 651, the rule is thus stated:

"Gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and upon breach of the marriage engagement by the donee the property may be recovered by the donor."

The case of Ruehling v. Hornung, 98 Pa. Super. Ct. 535, is a case involving a question similar to the one under consideration, but the Pennsylvania Superior Court, not being a court of last resort, no copy of the opinion is available, and the facts are unknown to us except by inference gathered from the digest of the case found in Current Digest (1930) vol. 5, p. 1280, Gifts, which reads:

"Engagement is subject to implied condition that gift will be restored if marriage does not take place, due to the death, disability, donee's breach of contract, or dissolution thereof by mutual consent."

Thus it is obvious that if the donee breaches the contract, the donor may recover any property or money which the donee may have obtained from the donor in consideration of the marriage contract.

In the case at bar there is no contention that the marriage contract failed to materialize due to any disability of the parties to perform the contract or that the the donee breached the contract or that it was dissolved by mutual consent.

This brings us to a consideration of the question whether or not the same rule obtains when the donor breached the contract, as was done in the instant case.

It is insisted for appellee that a contract to marry is similar to any other contract, in that, where the general law of contracts can be applied such law should be followed; and further that such a contract may be supported by the mutual promise of the parties, yet it may be supported by additional consideration on the part of either.

This raises the mooted question whether or not the marriage status should be placed in the same category with that of commercial transactions.

In ancient times people were not much inclined to consider marriage or marriage contracts as a business or commercial transaction, but rather a sacred status. But the modern trend is to the contrary. The laws of all jurisdictions provide for and recognize both nuptial and prenuptial contracts relating to the property and business rights of the parties, whether such contracts are executed or executory. It is common knowledge, moreover, that in this modern age marriage is considered from a business point of view as much so as a status or companionship. A marriage contract may be supported by the mutual promise of the parties—the promise of one to marry the other. But if the contracting parties choose to pay or promise an additional consideration, they will be bound thereby just the same as in commercial transactions. Such additional consideration might be likened unto purchase money, or, in commercial terms, "earnest" money, to bind the contract, and, in such cases if the contract fails or is not carried into effect through the purchaser's fault, he cannot recover the "earnest" money so paid. Robenson v. Yann, 224 Ky. 56, 5 S. W. (2d) 271.

In support of this conclusion we refer to the case of Jacobs v. Davis, (1917) 2 K. B. 532, in which case there was involved a question similar to the one in the instant case. After discussing the origin and history of the engagement ring, the court said:

"Though the origin of the engagement ring has been forgotten, it still retains its character of a pledge of something to bind the bargain or contract to marry, and is given upon the understanding that a party who breaks the contract must return it. Whether the engagement ring is a pledge or a conditional gift, the result is the same."

Furthermore, we have the recent English case of Kohen v. Sellar, (1926) 1 K. B. 537. This case is in point both in facts and questions of law to the case at bar. The decision of this case follows the same reasoning used in the American decisions, except in the American cases a return of the engagement ring was sought by the donor where the donee had broken the engagement. In the English case, supra, the man broke the engagement and sought to recover through process of law the ring he had given as a pledge that he would perform the agreement. The girl, donee, instituted a suit for breach of promise against the man, and he, defendant, counterclaimed and asked for the possession of the ring. After a discussion of the questions of law involved, including the question of conditional gifts and binders to bargains, the court said:

"If the woman who has received a ring refuses to fulfill the conditions of the gift, she must return it, so on the other hand, I think that if the man has without a recognized legal justification refused to carry out his promise of marriage, he cannot demand the return of the engagement ring."

In the same decision it is further pointed out that by growth of decisions the promise of marriage is today fixed with many of the legal characteristics of a commercial bargain and is governed largely by the same principles of law. The court, in the same opinion, further used this language:

"Reliance cannot be placed on self-induced frustration. The like rule will, I think, apply to matrimonial adventures also. * * * It is a principle of law that no one can in such cases take advantage of the

existence of a state of things which he, himself, produced.''

Perhaps originally the engagement ring was only a custom evidencing the relations the parties had assumed toward each other, and had but little, if any, contractual significance. But in modern ages it has developed into more than a mere custom or symbol, and has become a part of the real consideration of the contract. Furthermore it must be remembered that much of our law has its inception and origin in custom. Shakespeare said:

"Hath not old custom made this life more sweet than that of painted pomp.''

Appellant voluntarily gave appellee the engagement ring as an additional consideration for her promise of marriage and thereafter voluntarily breached the contract, and now attempts to invoke the aid of the law to relieve himself of the situation in which he, without legal excuse, voluntarily placed himself.

In view of the authorities herein cited, and even without precedent of authority, a sense of right, fair play, and justice forbids us to grant him the relief asked.

Therefore the appeal is denied and the judgment affirmed.

The whole court sitting except Judges Thomas and Dietzman.