## SHAW v. CHRISTIE.

### No. 3931.

Court of Civil Appeals of Texas. Beaumont.

Feb. 5, 1942.

Rehearing Denied March 25, 1942.

Tom F. Coleman, Sr., C. W. Falvey, and
Tom F. Coleman, Jr., all of Lufkin, for
appellant.

J. W. Townsend, of Austin, for appellee.

O'QUINN, Justice.

On the 5th day of August, 1937, T. C.
Carswell, joined by his wife, by their war-
ranty deed conveyed to appellee, Mrs. Dena
Jamison (Mrs. Dena Jamison Christie
Crawford), certain real property in Ange-
lina county, fully described in a certain deed
of record in book 83, page 317, deed records
of Angelina county. The consideration of
this deed, $500 cash, was paid by appellant,
S. H. Shaw, to T. C. Carswell. On the 19th
day of September, 1940, appellant filed this
suit against appellee, under her name Dena
Jamison Christie, to recover the property
conveyed to her by Carswell. For cause
of action, appellant plead:

"In this connection Plaintiff will show
the court that on or about August 6, 1937
he purchased said tract of land and took
the title thereto in the name of the defend-
ant Dena Jamison with the distinct under-
standing and agreement with said defendant
Dena Jamison that she would hold said
land in her name for him until such time as
this Plaintiff came into position to or re-
quested defendant to marry or convey the
said property back to him at his request.

"At or before which time she would con-
vey said land to this Plaintiff as soon as
requested and he took the title thereto in
the name of Dena Jamison for convenience
only.

"2. That thereafter plaintiff learned that
the Defendant had misrepresented the facts
to him and when Plaintiff became in posi-
tion to marry said defendant in accordance
with his previous agreement so to do, the
Defendant for some reason unknown to him
refused to marry Plaintiff, in fact plaintiff
found out after placing title to said land in
Defendant's name as aforesaid that said

Defendant had, unknown to him, given him a wrongful name or else had married herself to another, thus perpetuating upon Plaintiff a fraud, which was not known to Plaintiff at the time he acquired title to said land in the defendant's name in good faith and believing all the things the said defendant had told him.

"3. Plaintiff shows the court further that he now finds for the first time that said representations are untruthful and were untruthful at the time made by Defendant and said Defendant has failed and refused to convey said land to him or his vendees but now remains in the unlawful possession of said land and premises to Plaintiff's damage in the sum of One Thousand Dollars and said Defendant now unlawfully withholds from Plaintiff the possession of said land and premises to his damage in said sum of money.

"4. Consequently plaintiff prays that he have and recover of and against defendant the title to and possession of said tract of land and premises, together with his damages; that defendant be cited to appear and answer herein."

Appellee answered by demurrers, general denial, that the property was conveyed to appellee under a marriage contract which was void as being in violation of the Statute of Frauds, Sec. 3 of Art. 3995, R.C.S.1925. Judgment was for appellee on an instructed verdict that appellant take nothing, from which he has prosecuted his appeal to this court. Appellee offered no testimony. The controlling testimony offered by appellant was as follows (Q. & A. reduced to narrative): "I am 79 years of age and have resided in Lufkin for the past ten years. I have known the defendant, Mrs. Jamison Christie, about eight years. In 1937 I had an agreement with Mrs. Jamison to purchase the property in issue and to put the title in her name. The agreement was that we would get married sometime, and if we didn't it was supposed to be mine. I paid for it, and put the title in her name. The agreement about acquiring the property was as follows: I told her it didn't make no difference, it was mine anyway. She didn't have any money when we made that agreement. I paid for the property; she didn't pay a penny on it. She moved on to the property and I lived there about two or three months. She didn't board me; I boarded all of them a while, I bought the groceries. She owed money when we had

that agreement. I said I didn't want to marry a woman in debt, and I told her she could get along until she got out of debt. I didn't want to marry, but we made the contract, I guess we did. The kind of agreement we made when we purchased this property was that we were going to marry sometime; if we didn't get married she was to deed it back. Yes; to deed it back one day after she had the deed. I went over the last Sunday in August, 1940, and asked her how much she owed and she said $28.00. The conversation I had with her on the last Sunday in August, 1940, relative to deeding the property back to me or getting married—she told me she was not going to marry me. I brought this suit in September, right after that. If she had paid her debts off I would have married her. I took the property in the defendant's name; I thought it was her name at the time; I thought it was her name; it was actually later that I found out her name was Christie. She has been on the property three years up to last August. When she refused to marry me she gave the excuse that she was afraid I would be jealous of her. She talked to me on Sunday, the First of September, and married the next Thursday. I went and talked to her on the First Sunday in September and asked her about a settlement. She didn't tell me she was fixing to marry; I haven't been there since. I had a marriage contract with her, this deed shows it was in August, 1937, this marriage might have been before that transaction or afterwards, the contract could have been on the last of August, either July or August. I haven't any written contract with her, I have no written contract about a marriage contract. I was in position to marry her when I made that contract. I didn't tell her I wanted to marry because I wasn't ready. I went to see her about marrying her prior to 1940. She told me in August, 1940, that she would not marry me. I have heard of a man talking about getting married in a public place. One day I asked five women to marry me in a public place, I made the proposition and told them if they wanted to marry me to hold up their hands. If they had held up their hands I would have been in a jam."

T. C. Carswell, the grantor in the deed in issue, testified: "On or about August, 1937, I lived in Lufkin. Mr. Shaw gave me this check—a check for $500.00—for two lots and a house. That is the property Mrs. Jamison lives on. Mr. Shaw paid me the

money and I had the deed fixed up. I had no dealings with this woman. I do not know anything about the agreement he had with her. She paid no part of the consideration; I got the money on that check. I never talked with the woman."

Mr. Steve Tullos testified: "I live three and a half miles out of Lufkin, I know the plaintiff, Mr. Shaw, and the defendant, Mrs. Jamison. I have known him for 12 or 15 years and her for 7, 8 or 10 years. I recall a certain conversation between the plaintiff and the defendant in Mr. Shaw's store relative to him purchasing a certain piece of property at the Lufkin Land & Lumber Company. As well as I remember, he and she were talking about buying the place. They were talking about buying it and Mr. Shaw told her he would buy it and would pay for it and if they didn't marry she was to deed it back to him. That was in August, about the 15th of August, 1937. He told her he didn't want to marry anyone in debt and when she got out of debt they would marry. I heard the defendant agree to marry him if he would purchase that property for her. I heard the conversation. The way I understood it, he wanted to buy it and deed it to her. The reason was he didn't want his daughter to know anything about it. That was the reason for putting the title in her name, with the understanding agreement relative to their marriage. I heard the conversation between the plaintiff and the defendant, that he would buy the property and pay for it if she would marry him, and if she didn't he would get it back; as I understood it, he was to buy it and deed it to her; he didn't want his daughter to know about it; if he didn't marry her she was to deed the property back."

## Opinion.

On the undisputed testimony, appellant did not have this property conveyed to appellee as an unconditional gift to her. She paid nothing for it. The property was conveyed to her on condition that she would marry appellant, and if she did not marry him that she would convey it back to him. The consideration moving from her to appellant for this property was that she would pay her debts and marry him; that consideration failed. She never paid her debts, but when she had reduced them to $28 she unconditionally refused to enter into the marriage contract with him.

It is our conclusion that the contract between appellant and appellee does not fall within the provisions of Sec. 3, Art. 3995, but that this contract falls within the following proposition of law announced by 28 C.J. 651, Subject, Gifts, Sec. 48: "Gifts in contemplation of marriage. A gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and upon breach of the marriage engagement by the donee the property may be recovered by the donor."

The property in issue was not put in the name of appellee in consideration of her marriage to appellant, but to be held by her for him on condition of their marriage at an indefinite date to be fixed in the future, and if the marriage was not consummated, then she was to reconvey the property to him. The title did not pass to her unconditionally but on a condition that was breached by her.

It follows that the judgment of the lower court should be reversed and the cause remanded for a new trial.

Reversed and remanded.