PAUL A. WHITE *v.* SUSAN FINCH

CIRCUIT COURT                                    NINTH CIRCUIT
FILE No. CV 9-645-1800

Memorandum filed December 17, 1964

*George N. Deane,* of Clinton, for the plaintiff.

*John B. Kidney,* of Clinton, for the defendant.

HOLDEN, J.  This is an action in which the plaintiff seeks to recover from the defendant the sum of $515.91, alleged to be the value of an engagement ring which, the engagement broken, the defendant has refused to return.

This is a case in which the credibility of the witnesses has greatly influenced the decision of the court.  *Pagano* v. *Mitchell,* 9 Conn. Sup. 329.  The parties joined in some very spirited issues of veracity.  *Juliano* v. *Latella,* 12 Conn. Sup. 471.

In October, 1962, the plaintiff, then a teacher in the public school and a church organist in the town of Clinton, met the defendant.  Going out together, they developed a mutual fondness, one for the other, and, before Christmas, 1962, the plaintiff proposed marriage to the defendant.  More unready than unwilling, the defendant demurred, claiming that she wanted time "to think it over."  On February 13, 1963, appropriately the day preceding Valentine's Day, the proposal was renewed and accepted.  One week thereafter the engagement ring, subject of this action, was given to the defendant by the plaintiff.  The engagement was not announced publicly immediately.  This is important only in that the defendant's failure to take immediate action to relay the joyous information to the world became a bone of contention between the parties.

There were other problems.  The previous constant companionship became infrequent meetings.  The plaintiff, a ski enthusiast, sought out the snow-

capped hills, leaving the defendant, uninvited, alone in Clinton. The plaintiff, a forceful man, announced to his immediate friends that the wedding was to be in August, although his bride-to-be had not as yet set the date. This no more pleased her than did his gift of a book of etiquette, "so that she might plan the wedding correctly," but their status as an engaged couple remained the same.

The climax came in the summer of 1963, coincidentally with the tercentenary celebration of the founding of the town of Clinton. Among the planned festivities, there was to be a beauty contest which the defendant had been asked to enter, representing her mother's garden club. To this the plaintiff had multiple objections, the most cogent of which was that he was, as he stated, to be a judge in the contest. The ethical argument won out, and the defendant withdrew, attending the contest as an observer. The plaintiff, far from being a judge, was not even there. He had gone to the defendant's home and, not finding her there, suspected the worst.

However unfounded were these suspicions, they remained with the plaintiff until the next day, when the defendant came to the plaintiff's lodging to seek the return of a punchbowl given them as an engagement present. The purpose of the quest was innocuous. She wanted to use it. The plaintiff at first refused to return it, saying that it had been given to them for their home and there was to be no home. Then followed his statement, "As far as I am concerned, this engagement is through." The following day the defendant returned to the plaintiff all gifts given her by him. She did not return the engagement ring. Subsequently, an announcement was made in the newspaper, at the defendant's bidding, that the engagement had been terminated "by mutual consent."

The question whether the engagement was broken by one of the parties or terminated by mutual consent cannot be determined by a newspaper article, calculated to preserve the dignity of both parties as far as the rest of the world was concerned. The defendant could have done little else.

Whether the defendant would have retreated from the engagement before the plaintiff said the fateful words is not in issue. Whatever words were spoken and whatever action was taken to terminate the engagement were spoken and taken by the plaintiff.

The question as to the ownership of the engagement ring is unique in this jurisdiction. Whether Connecticut people are quick to adjust such problems without adjudication or unwilling to publicize them is not quite clear. Others in other jurisdictions have not been so shy. The Roman Law provided for the return of betrothal gifts when the parties mutually dissolved the contract and for forfeiture by the party at fault when the repudiation was unjustified. Fryer, Readings on Personal Property (3d Ed.) p. 957. The prevailing view in the United States and England follows the Roman Law in placing weight upon the fault of the parties. Hence, it has been held that where an engagement is broken owing to the fault of the donor, he may not recover the ring. *Schultz* v. *Duitz,* 253 Ky. 135; *Beck* v. *Cohen,* 237 App. Div. 729 (N.Y.); *Beer* v. *Hart,* 153 Misc. 277 (N.Y.). The decisions are based upon the theory that the ring is given upon an implied condition that the marriage will take place. The law construes a promise of marriage generally to be a promise to marry on request. *Clark* v. *Pendleton,* 20 Conn. 495, 505. Seldom are such contracts expressed in very definite language, and they are not improperly or infrequently inferred as much from the conduct of the parties toward each other

as from any direct evidence of expressed stipulations. *Waters* v. *Bristol,* 26 Conn. 398, 405.

A breach of an executory contract by anticipation occurs only when there is a distinct, unequivocal and absolute refusal to perform. The renunciation must be so distinct that its purpose is manifest and so absolute that the intention to no longer abide by the terms of the contract is beyond question. *Wonalancet Co.* v. *Banfield,* 116 Conn. 582, 586; *Wells* v. *Hartford Manila Co.,* 76 Conn. 27, 35. No words could have been more distinct, more unequivocal than the plaintiff's: "As far as I am concerned, the engagement is through." There was, indeed, a breach of the promise to marry, but it came about through the actions and words of the plaintiff.

It is well settled that the party who has initiated the action and who seeks a judgment in his favor must prove that which he alleges, if he would prevail. *Stevens* v. *Smoker,* 84 Conn. 569, 572; *Lockwood* v. *Lockwood,* 80 Conn. 513, 521. This burden of proof the plaintiff has not sustained.

It would be academic to discuss the question of damages here.

For the reasons above stated, the issues are found for the defendant.

Accordingly, judgment may enter for the defendant, who may receive her costs.