[No. 9363–8–III.   Division Three.   February 6, 1990.]

SHIRLEY SPINNELL, *Respondent*, v. GLENN QUIGLEY, *Appellant*.

800

*Joseph P. Delay* and *Delay, Curran, Thompson & Pontarolo, P.S.,* for appellant.

*Carole Hemingway* and *Dean, Smith & Hemingway,* for respondent.

THOMPSON, J.—Glenn Quigley appeals from a judgment ordering him to return an engagement ring to Shirley Spinnell, his former fiancee. We reverse.

In October 1986, Ms. Spinnell brought this action against Mr. Quigley, seeking items of personal property, as well as compensation for her services from which Mr. Quigley allegedly reaped substantial financial benefit. Her complaint alleged at paragraph 8:

> Defendant purchased a two–carat diamond ring which he gave [plaintiff] in approximately October, 1982 to formalize their engagement. Defendant subsequently took back the ring without the consent or knowledge of Plaintiff.

Following trial, the court found: "the engagement ring was given in contemplation of marriage and conditioned upon the marriage. Since the marriage did not take place, defendant will retain the engagement ring." The court awarded Ms. Spinnell the sum of $7,500, the amount it determined Mr. Quigley owed her for uncompensated services.

Ms. Spinnell, by motion, asked the court to reconsider its decision. Mr. Quigley's counsel then filed the offer of settlement which he had previously made to Ms. Spinnell

pursuant to RCW 4.84.280 offering to settle the case for $7,500. Since Ms. Spinnell's judgment did not exceed the settlement offer, counsel for Mr. Quigley asked for an award of attorney fees.

Thereafter, on reconsideration, the court made the following findings:

III.

That the Court makes no specific finding as to the cause of the break up of the parties' relationship;

IV.

That the Defendant did not give the engagement ring conditionally to the Plaintiff, nor did the Plaintiff voluntarily give the ring back to the Defendant. There was nothing regarding the relationship that would justify Defendant taking the ring back without Plaintiff's permission. The ring is the separate property of Plaintiff and Plaintiff is entitled to the return of the engagement ring;

V.

That Defendant's request for attorney's fees was made prior to final judgment and, based on that portion of the Motion to Reconsider granted to Plaintiff, should be and is hereby denied.

We have not located any reported decisions in Washington dealing with the gift of an engagement ring. The jurisdictions which have considered the issue uniformly hold that marriage is an implied condition to transfer of title and that the gift does not become absolute until the marriage occurs. However, the majority of jurisdictions refuse to enforce the condition if the donor unjustifiably terminates the engagement. *See* Annot., *Rights in Respect of Engagement and Courtship Presents When Marriage Does Not Ensue*, 46 A.L.R.3d 578 (1972).

The rationale of these cases is based upon a contract theory, *i.e.*, the ring is a symbol of an agreement to marry. If that agreement is not performed, then the parties should be restored to the status quo. This means that the ring is returned. *But,* if the agreement is not performed because of a breach by the donor, the donor should not benefit from that breach by regaining the ring.

Although there are more recent decisions, perhaps the best explanation of the rule is contained in *Mate v. Abrahams,* 62 A.2d 754, 754–55 (N.J. 1948):

> On principle, an engagement ring is given, not alone as a symbol of the status of the two persons as engaged, the one to the other, but as a symbol or token of their pledge and agreement to marry. As such pledge or gift, the condition is implied that if both parties abandon the projected marriage, the sole cause of the gift, it should be returned. Similarly, if the woman, who has received the ring in token of her promise, unjustifiably breaks her promise, it should be returned.
>
> When the converse situation occurs, and the giver of the ring, betokening his promise, violates his word, it would seem that a similar result should follow, i.e., he should lose, not gain, rights to the ring. . . . *How, on principle, can the courts aid him, under such circumstances, to regain a ring which he could not regain, had he kept his promise?* "No man should take advantage of his own wrong." Of course, were the breaking of the engagement to be justifiable, there would be no violation of the agreement legally, and a different result might follow.[1]

(Italics ours.) *See also Simonian v. Donoian,* 96 Cal. App. 2d 259, 215 P.2d 119 (1950); *White v. Finch,* 3 Conn. Cir. Ct. 138, 209 A.2d 199 (1964); *Schultz v. Duitz,* 253 Ky. 135, 69 S.W.2d 27, 92 A.L.R. 600 (1934); *Lewis v. Permut,* 66 Misc. 2d 127, 320 N.Y.S.2d 408 (1971); *Wion v. Henderson,* 24 Ohio App. 3d 207, 494 N.E.2d 133 (1985); and *Pavlicic v. Vogtsberger,* 390 Pa. 502, 136 A.2d 127 (1957).

■ We agree with the cited authority that the donor of an engagement ring makes the gift upon the implied condition that if the contemplated marriage does not occur, the donee will return the ring. The donee should keep the ring only if the donor *unjustifiably* breaks the engagement.

---

[1]The court in *Mate,* at 755, also set forth the historical basis for the rule:

"Turning to the authorities, the result is the same, by the weight of authority at least. American Law Institute Restatement, "Restitution," Sec. 58 (c), p. 231; 24 A.J., "Gifts," Sec. 57; 92 A.L.R. 608; 38 C.J.S., Gifts, § 61, p. 851, and cases there cited. The leading case, which sets forth the historical antecedents of this ancient social custom, is Jacob v. Davis, 2 K.B.(1917) 332. Here the court, after alluding to the ancient Jewish and Roman customs, says, "Though the origin of the engagement ring has been forgotten, it still retains its character of a pledge, or something to bind the bargain or contract to marry, and it is given on the understanding that a party who breaks the contract must return it." To the same effect are Schultz v. Duitz, 253 Ky. 135, 69 S.W.2d 27, 92 A.L.R. 600 [(1934)]; . . .".

Here, the court stated in its order on reconsideration that it could make no specific finding as to the cause of the breakup of the parties' relationship. We conclude the court's original decision was correct and in the absence of a finding that the engagement was terminated by the donor, the ring should have been returned to Mr. Quigley.[2]

Mr. Quigley has submitted affidavits for attorney fees both at trial and on appeal, totaling in excess of $35,000. At oral argument, counsel advised the court Mr. Quigley was not seeking judgment for the entire fee, but should be allowed an amount sufficient to offset the $7,500 judgment obtained by Ms. Spinnell. We therefore award Mr. Quigley fees pursuant to RCW 4.84.250, .290 in the amount of $7,500.

The portion of the judgment ordering Mr. Quigley to return the engagement ring to Ms. Spinnell is reversed.

GREEN, A.C.J., and SHIELDS, J., concur.

---

[2]In light of our holding, we need not address whether the statute of limitation or allegedly inadequate pleadings barred Ms. Spinnell from seeking return of the ring.