[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action the plaintiff seeks recovery of an engagement ring given to the defendant in consideration of marriage. He claims that at a later date she broke off the engagement and kept the ring. Despite a request that she return the ring, she refused to do so.
The defendant claims that the ring was not given in consideration of marriage. She states that it was given as an outright gift and that she told the plaintiff at the time that she would not marry him. It is her claim that he gave her the ring to wear always so that other men would keep away from her.
The history of the case is complicated and requires the court to analyze all the facts.
 Facts
The parties met in July or August of 1996. He proposed marriage during the summer of 1977 and later that year he bought her an engagement ring for which he paid $18,000 to $20,000 which was valued at $21,300 for insurance purposes. The parties had a dispute and the engagement was broken off. She gave him back the ring.
In August of 1998, they renewed their relationship. The above facts are not in dispute. CT Page 2112
Thereafter, the parties violently disagree as to what happened.
The plaintiff claims that on August 8, 1998, he gave her the ring again with the understanding that she was to keep it only if she married him. He then testified that on October 23, 1998, she told him that she would not marry him. He asked her for the ring back, but she said she was going to keep it. It is his claim that she broke off the engagement. The discussion took place in his car after they left the wedding party of a friend. On cross-examination he said he did not remember the exact words of the conversation.
In her testimony, the defendant said that when they discussed getting back together in late August or September of 1998, at Peter's Restaurant on Bank Street, New London, he wanted her to agree to a prenuptial agreement such as he had with his former wife. She refused to do so. He then gave her the ring and told her to wear it always on her finger. She accepted the ring but told him she would not marry him because they had too many problems. She also refused to move into his home. There was no discussion about returning the ring at that time.
In the car after the wedding party of October 23, 1998, she said he terminated the engagement, not her. He then demanded the ring, she refused. On November 20, 1998, the plaintiff came to her house with a check for $15,000 to buy back the ring. He denied ever doing this. She also claimed that on November 23, 1998, he broke the door to her house trying to get inside. She called the police.
When the sheriff served the Writ of Replevin, she told him she did not have the ring. She said she left it on her dresser but didn't realize it was missing until the sheriff asked for it. She believes that the plaintiff may. have stolen the ring.
To the testimony of the defendant, the plaintiff responded that he did not give her the ring at Peter's Restaurant, but in Nantucket where they got engaged for the second time. He also denied that he broke down the door to her house or that he offered her a check for $15,000. He could not remember the exact conversation when he gave her the ring.
She then testified that he broke into her house on other occasions and believes he may have stolen the ring. The police were called to her house at least three times in the fall of 1998 according to a neighbor at that time who is now the defendant's husband.
 Discussion
CT Page 2113
The issue for the court to decide must hinge on the credibility of the two parties. The law is clear. Generally, it is held that where an engagement is broken owing to the fault of the donor he may not recover the ring. The theory is that the ring is given on an implied condition that the marriage will take place. Clark v. Pendleton, 20 Conn. 495, 505
(cited in White v. Finch, 3 Conn. Cir. Ct. 138 (1964). Such contracts are seldom expressed in very definite language and they are not improperly or infrequently inferred as much from the conduct of the parties toward each other as from any direct evidence of expressed stipulations. Waters v.Bristol, 26 Conn. 398, 905.
The problem in the instant case is to establish what was said or what can be inferred from the actions of the parties relating to the presentation of the ring to the defendant in the summer of 1998. The parties do not even agree where the act took place. She claims it was at Peter's Restaurant in New London. He says it happened in Nantucket. He says it was in consideration of marriage but is vague as to exactly what was said. The defendant on the other hand was vehement that when he gave her the ring she clearly stated she was not going to marry him, but that he gave her the ring any way and told her to wear it always. She believed the purpose of this was to keep other men away from her.
Although the testimony was conflicting and confusing at times, the court is firmly convinced that when the ring was given to the defendant in the summer of 1998, it was not given on the condition of marriage.
 "It is well settled that the party who has initiated the action and who seeks a judgment in his favor must prove that which he alleges, if he would prevail." Stevens v. Smoker, 84 Conn. 569, 572. (Cited in White, supra, p. 4-5.)
 Conclusion
The plaintiff has not sustained his burden of proof in this case. The issues are, therefore, found in favor of the defendant.
Accordingly, judgment may enter for the defendant.
D. Michael Hurley, Judge Trial Referee CT Page 2114