# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00302-CV

**Michael Curtis, Appellant**

**v.**

**Michele Anderson, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 253,411, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## O P I N I O N

This is an appeal from a summary judgment in a suit brought by appellant Michael Curtis to recover a diamond ring from appellee Michele Anderson after Curtis terminated the couple=s engagement. Curtis sued for breach of an oral agreement and conversion, and the trial court granted Anderson a summary judgment. Curtis appeals arguing that Anderson was not entitled to summary judgment because the ring was a conditional gift, and Anderson=s possession of the ring became an unlawful conversion when Anderson refused to return the ring. We will affirm the judgment of the trial court.

# FACTUAL BACKGROUND

In the summer of 2000, Curtis and Anderson became engaged to be married. Curtis gave Anderson a ring. Approximately six or eight weeks later, the engagement ended. Anderson refused to return the ring to Curtis. Curtis alleges that at the time that he gave her the ring, Anderson agreed that if the wedding was called off she would return the ring.

The only summary judgment evidence before the trial court were excerpts from Curtis=s deposition. Concerning the agreement to return the ring, Curtis testified that Awe had a mutual understanding that I clearly stated and she accepted that if I did notCif we did not become married that I would retainCretain the stone.@ He admitted that the Amutual understanding@ was not reduced to writing. When asked who Abroke off the engagement,@ he testified, AI did. . . . I did it for several reasons. One is that I felt like she had some sexual hang-ups. I felt that she had some previous general issues with men, and she also had a very volatile temper.@ Based on this record, the trial court granted summary judgment in favor of Anderson.

# DISCUSSION

Anderson=s sole ground for seeking summary judgment was that Curtis could not prevail because the statute of frauds prohibits the enforcement of any alleged oral agreement concerning return of the ring. *See* Tex. Fam. Code Ann. ' 1.108 (West 1998). Curtis argues by his first issue that the statute of frauds is not applicable; he claims the case is governed instead by the conditional-gift rule. According to Curtis, the ring was a conditional gift, and because the contingent condition of marriage was not met, the gift

was not completed and the ring should be returned to him. In his second issue, he contends that he presented sufficient evidence to establish the elements of a tort claim for conversion.

**Standard of Review**

The propriety of a summary judgment is an issue of law subject to *de novo* review. *Roland v. DaimlerChrysler Corp.,* 33 S.W.3d 468, 469 (Tex. App.CAustin 2000, pet. denied); *Grocers Supply Co. v. Sharp*, 978 S.W.2d 638, 642 (Tex. App.CAustin 1998, pet. denied). A defendant is entitled to a traditional summary judgment upon establishing that the plaintiff has no viable cause of action by either conclusively disproving at least one essential element of each theory of recovery, *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999), or conclusively proving all elements of an affirmative defense, *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). If a defendant establishes a right to judgment as a matter of law, the burden shifts to the plaintiff to raise a fact issue precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If a summary judgment does not specify the ground on which it was granted, the judgment will be affirmed on any ground raised in the motion and supported by the record. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

We also apply the following standards to summary-judgment proceedings: (1) a summary judgment movant has the burden to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law; (2) in determining whether a material fact issue exists, evidence favorable to the nonmovant is taken as true; and (3) every reasonable inference is indulged in favor of the nonmovant.

*Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985); *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.CAustin 1999, no pet.).

**Statute of Frauds**

The application of the conditional-gift rule assumes that there is no binding agreement between the parties about ownership of the engagement ring should the marriage not occur. If a binding agreement between the parties exists, then application of the conditional-gift rule is not appropriate. Curtis contends that when he and Anderson became engaged, Anderson agreed that she would return the ring if they did not marry. He testified that their Amutual understanding@ was an express agreement, but their Amutual understanding@ was not reduced to writing.

In response, Anderson asserted in her motion for summary judgment that Curtis=s contract and conversion claims could not prevail because of the statute of frauds found in section 1.108 of the family code, which prohibits enforcement of oral agreements in consideration of marriage. Tex. Fam. Code Ann. ' 1.108 (West 1998). According to Anderson, even if she agreed to return the ring, her promise is unenforceable because it is not in writing.

In 1997, the legislature added section 1.108 to the family code.[1] It states:

---

[1] Act of Apr. 3, 1997, 75th Leg., R.S., ch. 7, ' 1, 1997 Tex. Gen. Laws 8, 9.

A promise or agreement on consideration of marriage or nonmarital conjugal cohabitation is not enforceable unless the promise or agreement or a memorandum of the promise or agreement is in writing and signed by the person obliged by the promise or agreement.

*Id.* This statutory provision has yet to be interpreted by any court. We must decide whether section 1.108 encompasses agreements between engaged parties regarding the disposition of engagement gifts should the engagement fail. The court=s objective in interpreting statutes is to determine legislative intent. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2002). In determining legislative intent, first we look to the plain and common meaning of the words used by the legislature. Tex. Gov=t Code Ann. ' 311.011(a) (West 1998); *Kroger Co. v. Keng*, 23 S.W.3d 327, 349 (Tex. 2000). Unless a statute is ambiguous, courts abide by the clear language of the statute and enforce it as written. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985).

Although section 1.108 was obviously intended to apply to prenuptial agreements, its plain language is broad enough to include Anderson=s alleged promise to return Curtis=s ring. An engagement ring is a special symbol in our culture. It is traditionally given by a man to a woman upon the woman=s acceptance of the man=s proposal of marriageBBit is a symbol of the couple=s engagement and their mutual agreement to marry. Clearly, engagement rings are traditionally given in contemplation of marriage or Aon consideration of marriage.@ *See* Tex. Fam. Code Ann. ' 1.108. We hold that Curtis=s allegation that he and Anderson had expressed their Amutual understanding@ that the ring would be returned if the marriage did not occur comes within the scope of this statute as written. Therefore, to be enforceable any such agreement must be in writing.

5

**Conditional-Gift Rule**

In the absence of an enforceable agreement, we turn to the conditional-gift rule. Although we agree that the conditional-gift rule applies in this case, it does not operate in Curtis=s favor. As applied by Texas courts, the rule contains an element of fault. Texas courts have held that the rule operates to require that the ring be returned to the donor if the donee is at fault in terminating the engagement. *See McLain v. Gilliam*, 389 S.W.2d 131 (Tex. Civ. App.CEastland 1965, writ ref=d n.r.e.); *Shaw v. Christie*, 160 S.W.2d 989 (Tex. Civ. App.CBeaumont 1942, no writ).[2] The court in *McLain* expressed the rule as follows:

> A gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and on breach of the marriage engagement by the donee the property may be recovered by the donor.

389 S.W.2d at 132.

In this case, Curtis as donor judicially admitted to terminating the engagement. He does not contend that Anderson was at fault in ending the engagement. His only complaint about Anderson was her refusal to return the ring after he terminated their relationship. When asked in his deposition why he terminated the engagement, he vaguely complained about Anderson=s Ahang ups@ and her temper. He made

---

[2] *See also Ludeau v. Phoenix Ins. Co.*, 204 S.W.2d 1008 (Tex. Civ. App.CGalveston 1947, writ ref=d n.r.e.); *Anderson v. Goins*, 187.W.2d 415 (Tex. Civ. App.CEastland 1945, no writ); *Hill v. Thomas*, 140 S.W.2d 875 (Tex. Civ. App.CBeaumont 1940, writ dism=d).

no attempt to justify his action and unequivocally admitted the decision to end the engagement was his.

Thus, this case involves the opposite situation than that involved in *McLain* and *Shaw*; here, the *donor* was

responsible for breaching the promise to marry.

This is a case of first impression in Texas. We have found no Texas case in which the

*donor* was responsible for terminating the engagement. We have examined cases in other jurisdictions, and

it appears that most courts apply a conditional-gift rule in adjudicating ownership of engagement gifts when

the marriage fails to occur.[3] However, there is a split of authority over injecting the issue fault into the rule.

Some jurisdictions that have considered similar situations have allowed the donee to keep

the engagement gift if the donor terminates the engagement.[4] One court articulated its reasoning as follows:

> On principle, an engagement ring is given, not alone as a symbol of the status of the two persons engaged, the one to the other, but as a symbol or token of their pledge and agreement to marry. As such pledge or gift, the condition is implied that if both parties abandon the projected marriage, the sole cause of the gift, it should be returned. Similarly, if the woman, who has received the ring in token of her promise, unjustifiably breaks her promise, it should be returned. When the converse situation occurs, and the giver of the

---

[3] *See generally* Barbara Frazier, Comment, *ABut I Can=t Marry You@: Who is Entitled to the Engagement Ring When the Conditional Performance Falls Short of the Altar*, 17 J. Am. Acad. Matrimonial Law 419 (2001); Brian L. Kruckenberg, Comment, *AI Don=t@: Determining Ownership of the Engagement Ring When the Engagement Terminates*, 37 Washburn L.J. 425 (1998); Elaine Marie Tomko, Annotation, *Rights in Respect of Engagement and Courtship Presents When Marriage Does Not Ensue*, 44 A.L.R. 5th 1 (1996).

[4] *Hahn v. United States*, 535 F. Supp. 132 (D. S.D. 1982); *Simonian v. Donoian*, 215 P.2d 119 (Cal. Ct. App. 1950); *White v. Finch*, 209 A.2d 199 (Conn. Cir. Ct. 1964); *Schulz v. Duitz*, 69 S.W.2d 27 (Ky. Ct. App. 1934); *Spinnell v. Quigley*, 785 P.2d 1149 (Wash. Ct. App. 1990); *see also Hooven v. Quintana*, 618 P.2d 702 (Colo. Ct. App. 1980); *Beberman v. Segal*, 69 A.2d 587 (N.J. Super. Ct. 1949).

ring, betokening his promise, violates his word, it would seem that a similar result should follow, i.e., he should lose, not gain, rights to the ring. In addition, had he not broken his promise, the marriage would follow, and the ring would become the wife=s absolutely. The man could not then recover the ring. The only difference between that situation and the facts at bar, is that the man has broken his promise.

*Spinnell v. Quigley*, 785 P.2d 1149, 1150 (Wash. Ct. App. 1990) (citing *Mate v. Abrahams*, 62 A.2d 754, 754-55 (N.J. County Ct. 1948)).

Others apply the conditional-gift rule without considering fault. Courts adopting this no-fault approach reason that (1) it is practically impossible for courts to determine Afault@ in the break-up of an engagement or whether a particular break-up was justified; (2) engagements are meant to be a period of evaluation, and a party should not be penalized for ending a doomed relationship; and (3) the underlying public policy favoring no-fault divorces should also apply to engagements. *See, e.g.*, *Fierro v. Hoel*, 465 N.W.2d 669 (Iowa Ct. App. 1990); *Heiman v. Parrish*, 942 P.2d 631 (Kan. 1997); *Benassi v. Back & Neck Pain Clinic, Inc.*, 629 N.W.2d 475 (Minn. Ct. App. 2001); *Albinger v. Harris*, 48 P.3d 711 (Mont. 2002); *Aronow v. Silver*, 538 A.2d 851, 853 (N.J. Super. Ct. 1987) (AThe fault rule is sexist and archaic, a too-long enduring reminder of the times when even the law discriminated against women.@); *Vigil v. Haber*, 888 P.2d 455 (N.M. 1994); *Gagliardo v. Clements*, 580 N.Y.S.2d 278 (N.Y. App. Div. 1992); *McIntire v. Raukhorst*, 585 N.E.2d 456 (Ohio Ct. App. 1984); *Brown v. Thomas*, 379 N.W.2d 868 (Wis. Ct. App. 1985).

Texas courts, including this Court,[5] have applied the fault-based conditional-gift rule when a donee breaks the engagement. We believe that the same rule should apply when the donor defaults. We hold that absent a written agreement a donor is not entitled to the return of an engagement ring if he terminates the engagement.

**Conversion Claim**

Curtis also complains that the trial court erred in granting summary judgment on his conversion claim. He argues that Anderson=s retention of the ring once he demanded its return transformed her continued possession of the ring into conversion. The tort of conversion is defined as the (1) unauthorized and wrongful exercise of dominion and control over (2) another person=s property (3) to the exclusion of or inconsistent with the rights of the plaintiff. *Waisath v. Lack=s Stores, Inc*., 474 S.W.2d 444, 446 (Tex. 1971); *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.CAustin 1997, writ denied).

A fundamental element of a conversion cause of action is that the plaintiff be the owner of or legally entitled to immediate possession of the property allegedly converted. *Kollision King, Inc. v. Calderon*, 968 S.W.2d 20, 23 (Tex. App.CCorpus Christi 1998, no pet.); *Lone Star Beer, Inc. v.*

---

[5] *See Dyess v. Fagerberg*, No. 03-93-00148-CV (Tex. App.CAustin Sept. 28, 1994, no writ) (not designated for publication); *McLain v. Gilliam*, 389 S.W.2d 131 (Tex. Civ. App.CEastland 1965, writ ref=d n.r.e.); *Shaw v. Christie*, 160 S.W.2d 989 (Tex. Civ. App.CBeaumont 1942, no writ).

*Republic Nat=l Bank*, 508 S.W.2d 688, 687 (Tex. Civ. App.CDallas 1974, no writ). In order to prevail on his conversion claim, Curtis had to establish his ownership or superior right to possession of the ring in question. *See id.* Curtis could not make this showing under either the parties=purported agreement or the conditional-gift rule. As a result, Anderson was entitled to judgment on this claim as a matter of law.

## CONCLUSION

We hold that when an agreement between an engaged couple as to the disposition of engagement gifts is not in writing, any dispute arising over ownership when the engagement is broken is subject to the fault-based conditional-gift rule. We affirm the summary judgment granted by the trial court.

Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith, and Yeakel

Affirmed

Filed: April 10, 2003

10