## Dixie Gaddie Hoagland v. John W. Hoagland.

(Decided March 4, 1927.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1.  Divorce—Findings Denying Either Party Divorce will Not be Disturbed Unless Against Preponderance of Evidence.—Unless finding that charges of either party were not sustained by evidence are against preponderance of evidence, it is duty of appellate court, on reviewing equity action for divorce, to affirm judgment.
2.  Divorce—Frequent Telephone Calls from Men and Late Night Absences, if Proved, Held Not to Warrant Finding of Wife's Misconduct as Ground for Divorce.—Evidence of frequent telephone calls from many men, and unexplained absences from home until late at night, held not sufficient to warrant findings of wife's misconduct as ground of divorce.
3.  Divorce—Where Both Parties are at Fault, Neither is Entitled to Divorce Unless Misdoings of One would Not Furnish Provocation for One Guilty of Excess.—In equity action for divorce, where both

parties were to blame, neither is entitled to absolute divorce unless blame of one is so much greater and out of proportion to that of other that misdoings of latter would not furnish sufficient provocation for one guilty of excess.

4. Divorce—Divorce from Bed and Board May be Granted in Court's discretion for Causes Less than Required by Absolute Divorce in Suit for Absolute Decree (Ky. Stats., Section 2121).—Under Ky. Stats., section 2121, divorce from bed and board may be granted in court's discretion for causes less than is required for absolute divorce, in case in which either or both parties are seeking absolute divorce.

5. Divorce—Decree from Bed and Board Does Not Call for Restoration of Property Acquired by Either Spouse as Prescribed by Statute (Ky. Stats., Section 2121; Civil Code of Practice, Section 425). —In equity action for divorce, decree from bed and board does not call for restoration of property acquired by either spouse, "obtained from or through the other before or during the marriage in consideration thereof," as prescribed by Ky. Stats., section 2121, and Civil Code of Practice, section 425.

6. Divorce—Evidence of Incompatibility Held to Warrant Divorce from Bed and Board, in Action in which Both Parties Sought Absolute Divorce.—Evidence of incompatibility, in suit for absolute divorce, held sufficient to warrant granting wife divorce from bed and board.

7. Divorce—Allowance to Wife, Granted Divorce a Mensa et Thora of $40 Per Month and $20 for Infant, Held Not Excessive, where Husband Earned $130 Per Month.—In equity action for divorce from bed and board, where husband earned $130 per month, allow ance to wife of $40 per month and $20 for infant daughter for thei maintenance and support, held not excessive.

LEO J. SANDMAN and HUBBARD & HUBBARD for appellant.

J. S. LUSCHER and L. G. BRADBURY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on the original and affirming on the cross appeal.

This equity action was filed in the Jefferson circuit court, chancery branch, first division, by plaintiff and appellant, Dixie Gaddie Hoagland, against her husband, defendant and appellee, John W. Hoagland, to obtain an absolute divorce upon the statutory ground of cruel and inhuman treatment on the part of defendant toward plaintiff for the statutory period. The first paragraph of the answer denied the ground relied on in the petition and in a second paragraph, which was made a cross-petition, defendant alleged lewd and lascivious conduct on the part of plaintiff and sought a divorce from her on that ground. It was denied and the court dismissed both

the petition and cross-petition, but ordered defendant to pay for the support of his girl child, 12 years of age, whose custody was adjudged to plaintiff, the sum of $7.00 per week, and denied plaintiff any sum for alimony and maintenance. From that judgment she prosecutes this appeal, and defendant by a motion duly made has obtained a cross-appeal in this court.

The learned chancellor who tried the case necessarily found that neither the charges in the petition, nor those contained in the counterclaim or cross-petition were sustained by the evidence and, unless his findings are against the preponderance of the evidence, it is our duty, under the well established practice in reviewing the finding of the facts by the trial court in equity causes, to affirm the judgment denying either party an absolute divorce insofar as it is based upon the facts so found. The record presents a state of facts which can not fail to excite the sympathies of the court and calls for an adjudication of the rights of the parties in the light of well known facts concerning human nature. The parties were married in 1901 and lived together for more than 24 years, during which time six children were born, but two of them are dead. The oldest at the time of the taking of the proof in this case, which was shortly after the separation, was between 22 and 23 years of age and married; while the others were 19, 16 and 12 years of age respectively, the youngest being a girl and the other three boys. Plaintiff was adjudged the permanent custody of the girl and the next oldest boy, while the youngest boy chose and was adjudged to the custody of the defendant. The latter was an employee of the Louisville & Nashville Railway Company, and was working for it locally in the city of Louisville at a salary of $130.00 per month, and which he had been doing for a number of years. The family plan seems to have been that on each pay day defendant would deliver his wages to plaintiff, who looked after the finances of the household, and out of it she managed to save enough, after furnishing the table and clothing the family, to purchase a little home, which was afterwards exchanged or sold, and about 1920 they purchased a new one at 1805 S. Preston street in the city of Louisville, which, according to the proof, was worth at the time of the trial about $6,000.00. It was supplied with furniture valued at about $1,500.00, and in addition, there was also enough saved, because of the economic

management of plaintiff as a sort of banker for the family, to purchase $1,000.00 in stock in the Louisville Electric and Gas Company.

Some time before March, 1925, plaintiff underwent an operation at a hospital, and during that month she underwent another very severe one from the effects of which she was a long time recovering, and during which time she was able to do but little, if any, work as housekeeper, but which she seems to have faithfully performed prior to her becoming afflicted. The married son, and the other one who went with and was adjudged to his father, testified against the mother in this case, and they, especially the older one, manifested such anger and partiality against the mother and couched their testimony in such venomous terms as to induce us to cast it aside as being wholly incredible. Especially so in view of the fact that there are such glaring contradictions in their testimony, particularly in that of the oldest son, who for three years before he testified was married and living away from home with his wife. He seems to have fallen out with his mother because of some remark she made about his prospective wife about a month before he married her. In giving his testimony he not only injected into it manifest bitterness, but after counsel had dismissed him he volunteered to testify concerning punishments inflicted by his mother upon her children, including himself, and thereby sought to heap additional blame upon his mother and to likewise disclose a most unfilial attitude towards her.

Neighboring women, to the number of four or five at least, testified that practically throughout the period that the parties lived at their present residence male callers over the telephone at one or more of the houses of the neighbors, plaintiff not having a telephone in her house, would commence to call her about 8:30 or 9 o'clock in the morning, and from the conversations they gathered that appointments would be made; and that directly afterwards plaintiff would dress herself and go down into the city, where she would remain until 2 or 3 o'clock in the afternoon. They, of course, could not tell who those people were, nor give the substance of the telephone conversations. They also testified that during a large part of the time automobiles would stop in front or near the front of the Hoagland residence and men would go therefrom into it, and that at such times defendant would be away at work and the children at school. It

was also in proof, and in a measure uncontradicted, that plaintiff would frequently leave home and go into the city at night and sometimes stay out as late as 11 or 11:30 o'clock, during which time she claimed that she was going to picture shows, and at others visiting friends. Such conduct irritated the husband and drew forth from him protests, and also inquiries as to where the plaintiff had been. This seemed to anger her and frequently she would give an abrupt answer and sometimes accompanied with an oath. Generally under such circumstances a quarrel would ensue, and finally on one such occasion, plaintiff threatened to kill her husband, and she made an effort to procure a pistol that was in the house, when he got to scuffling with her over the pistol and in which he shoved her across the bed, but we do not find in the record that he ever corporally punished her.

Some time near the first of July, 1925, plaintiff left him and remained away until August 13 thereafter, when she returned, but she did not thereafter abandon her leaving home at night and staying away as she had theretofore done to the extent of at least two or three times per week. Eventually the husband's objections culminated in another conflict in which there was a scuffle over the unspent portion of the last month's salary, and after that plaintiff again left and never returned, and filed this action on September 25, 1925. We have concluded to not attempt a detailed recitation of the testimony as given by each witness, but what we have said above embodies its substance and states the salient points developed thereby.

On the question of defendant's cruel and inhuman treatment the proof shows, in addition to what we have above briefly recited, that he was a faithful and constant worker. More frequently than otherwise, and almost constantly after his wife became disabled, he would arise at about 5 o'clock each morning and get breakfast for the whole family. On account of his physical labor in performing his work he, of course, was tired at night, and, perhaps, did not go with his wife as frequently as he should, although it is shown in proof that on a number of occasions he offered to do so when she would decline, and it appears that in the main he performed his duties as husband in the light of his station in life, although some of his conduct toward his wife was not as considerate as might be expected of a husband with more leisure and means to devote to her companionship and

enjoyment. No doubt, he was rougher in his conversation and deportment, on occasions, than he ought to have been, yet it is not a difficult task for us, in the light of the foregoing facts with reference to the conduct of his wife, to conclude that he had considerable provocation, for it is a universally known fact that the going away of the wife from home at night, alone, without a satisfactory excuse therefor, and remaining away until a late hour is certain to meet with opposition on the part of the husband, followed by objections on his part, and, to say the least of it, plaintiff was guilty of unpardonable indiscretion in doing so and should have been more considerate, not only of the feelings of her husband, but also of the duties she owed to her children.

On the other hand, we are not prepared to say that the proven conduct on the part of plaintiff was sufficient to establish the ground of defendant's counterclaim. No one saw her in any compromising attitude or position with any man, and the proven facts, at best, if it had been undoubtedly established that the men who telephoned to her were strangers in blood, merely raises a suspicion, and we have held in a number of cases that the character of the wife will not be blackened by adjudging the truth of the charge from such merely suspicious circumstances alone. We have no trouble, therefore, in concluding, as perhaps, did the chancellor below, that both of these parties were to blame for their unfortunate domestic trouble, and in such cases neither of them is entitled to an absolute divorce, unless the blame of one is so much greater and out of proportion to that of the other that the misdoings of the latter would not furnish sufficient provocation for the one guilty of the excess. Hoffman v. Hoffman, 190 Ky. 13; Kelly v. Kelly, 183 Ky. 172, and Wesley v. Wesley, 181 Ky. 135.

A case involving facts very much analogous to those found in this case bearing upon the conduct of plaintiff. the wife, is Anderson v. Anderson, 152 Ky. 773, and in which we held, as we had done in many cases prior thereto and likewise in cases subsequent thereto, that facts creating mere suspicion are not sufficient to convict the wife of a violation of the marital vow, although they might show that she was considerably indiscreet, and a due consideration of frail human nature necessarily substantiates that conclusion. We repeat, therefore, that this is a case exciting the sympathies of the court and one calling upon the immediate parties involved to reconsider

and if possible spend the remainder of their lives in happy union, laboring together as they have heretofore done for their own welfare as well as that of their children, some of whom, and especially the girl, stand sorely in need of such reconciliation.

We have frequently held, and which is authorized by section 2121 of our present statutes, that a divorce from bed and board not only may be granted for causes less than is required for an absolute divorce, but that such an *a mensa* decree may be rendered by the court in the exercise of a sound discretion when only absolute grounds are relied on, Wallace v. Wallace, 171 Ky. 192; and it is our conclusion that this record presents facts calling for the exercise of such discretion. The deed to the Hoagland home was taken to the husband and wife jointly, with an absolute title to the survivor, and the stock in the gas company was likewise issued jointly. Plaintiff is now in an impaired state of health and the judgment, as we have seen, allowed her no maintenance. She, by her frugality, assisted in the acquisition of both articles of property and also the household furniture, and it would be extremely inequitable and unjust if, after she had passed the meridian of life (45 years) with impaired health, she should be turned away without anything (except upon clearly proven legal grounds) and without the right to collect rent for the use of her joint interest in the property which was left exclusively under the control and occupancy of the defendant. A decree from bed and board does not call for a restoration of the property acquired by either spouse "obtained from or through the other before or during the marriage in consideration thereof" as is prescribed by section 2121 *supra* of the statutes, and section 425 of the Civil Code of Practice. Hoffman v. Hoffman *supra,* and Lewis v. Lewis, 196 Ky. 701.

Evidently under the present state of feeling the parties to this litigation will not and, perhaps, can not live together at the present time, and we have concluded that the best interest of all concerned requires that a divorce from bed and board be entered and that defendant should be required to pay a reasonable allowance for the maintenance and support of his wife and their daughter, which is their youngest child, and who has been adjudged, as we have stated, to the mother. The residence would, no doubt, rent for as much as $30.00 per month; the dividend on the gas stock is at least 7% or

$70.00 annually, one-half of which the wife is entitled to although both are now in custody of and their use appropriated by the husband. He earns $130.00 per month with no one to support but himself, since the boy whose custody was given him is now old enough to and is earning a salary more than sufficient for his support. We have, therefore, concluded that an allowance to the wife of $40.00 per month and $20.00 for the infant girl daughter for their maintenance and support could not be considered as excessive and that it should be so adjudged for the present, subject, of course, to the right of the court to make such alterations in the future as a change of the facts might justify.

Wherefore, the judgment is reversed on the original appeal, with directions to render one as indicated in this opinion, but it is affirmed on the cross-appeal. Whole court sitting.