## Murphy v. Murphy.

November 15, 1949.

432

A. M. Marret, Hagan & Hagan for appellant.

Ropke, Goldstein, Lampe & Poynter for appellee.

JUDGE HELM—Affirming judgment on cross-appeal and reversing judgment on appeal with direction.

From a judgment dismissing her answer and counterclaim, appellant, Amelia Elizabeth Murphy, appeals.

On January 30, 1946, appellee, James C. Murphy, filed his petition seeking an absolute divorce from appellant, and praying that he be declared the owner of two parcels of residential property—one located at 1656 West St. Catherine Street, the other at 1623 Hale Avenue, in Louisville. On February 7, 1946, appellant filed answer and counterclaim praying for a divorce from bed and board; for alimony during the pendency of the action; the "immediate possession and ownership of the household goods and furniture and exclusive use of the house and lot known as 1656 West St. Catherine Street," and for her costs, including a reasonable fee for her attorneys.

Summarizing the testimony for appellant, defendant below, taken June 28, 1946: Appellant and appellee were married June 30, 1935; they have no children; they are each 38 years of age; appellee has worked as a janitor and at odd jobs, earning about $20 or $25 per week; for a number of years they have lived at 1656 West St. Catherine Street, Louisville; they bought this home in 1941 for $2225; the Portland Building and Loan Association has a mortgage on this property; they made a down payment of $200; the monthly payments

are $25; the balance due at the time of the hearing was about $1500; two years later, the parties purchased a house and lot at 1623 Hale Avenue, Louisville; the down payment was $200; the balance owing to the Portland Building and Loan Association at the time of the hearing was $1100; the monthly payments are $17; the deeds are to the parties jointly, with remainder in fee simple to the survivor.

In his petition appellee alleges cruel and inhuman treatment. In her answer and counterclaim appellant alleges cruel and inhuman treatment. He alleges that the two pieces of property were purchased entirely from his funds; she says that they both worked and the two houses and lots were paid for by their joint savings, earnings, economy and sacrifice, and that she is the owner of a one-half interest in the property.

According to his version, she did not keep house as well as she should; he would come in and the meals would not be prepared; she would leave the dishes unwashed in the sink as long as two weeks at a time; he would come in cold and there would be no fire; the curtains were down at the time of the hearing; there were also bedbugs and roaches in the house at the time of the hearing; she would not keep up a fire; she would be out at night—at times did not come home until 12 o'clock, sometimes later than that; she was cool; would make remarks if he laid his clothes down; she did not mend his clothing; when they went to church she would not hold his hat; and, according to him, she did not contribute anything to the down payments or to the monthly payments on the property.

His sister, Anna Margaret Murphy, single, has lived with them since 1939. He says his wife has worked since their marriage, but not regularly. He did not have a bank account. At the rear of the St. Catherine Street property is a garage with a four-room apartment on the second floor renting for $32.50 per month. He uses the garage for repair work. According to his sister, she has lived with them some seven years; she never left as she had no place to go; his wife sometimes came home late at night; sometimes his wife "did treat her cool;" sometimes she did object to her living with them, and that she was out working most of the time. Up until shortly before the divorce suit, her brother's wife took

care of the house, prepared the meals and was a good housekeeper. The wife is a beautician, and so is the sister.

Taking the wife's version, she has been a beautician for about one year; before that, she did housework and school lunchroom work; for the housework she was paid from $6 to $8 a week; for the school work she was paid from $9.50 to $16.50 a week; as a beautician she was paid from $5 to $15 a week; she brought her money home and "put it in the place where we kept our money;" they pooled their money to pay their obligations. She states that "my money went for the same things that his did." In this way, they bought furniture for five rooms; paid their grocery bill and other living expenses, and made the payments on their property. They did not have enough to make the down payment on the St. Catherine Street property and her father, who had been injured at the mines, let her have $200. They used this for incidentals and to make the down payment on that property. The Hale Street property rents for $17 per month. In addition to the work she did away from home, she prepared the meals, kept the house clean, washed their clothing, and put coal on the fire when she would be leaving for work. Sometimes when she came in the house would be cold and she would build up the fire. There were no bedbugs or roaches in the house before the suit was filed. After the suit was filed, her husband gave his room to his sister and is using their bedroom; the wife has been sleeping on the divan since February 15, 1946. There are no roaches in the house now, but there are bedbugs on his bed. They are both living in the same house. She attends church regularly; he seldom goes; at church there "was no occasion to hold his hat, no one else does." She says "I tried to be a good wife to him. * * * He has been very indifferent to me for the past two years." She asked her husband to let his sister wash the woodwork; he told her that was her job and "If you can't do the work you will get out." His sister did not pay rent. She says "He moved in my bedroom and gave her his." She "moved out because I was afraid to stay in my bedroom." Her husband has a very mean temper, and has called her names and threatened to kill her. Since the filing of this action the house has not been as well kept as it was before. She did not

know that the suit had been filed and she and he continued to live together as man and wife until summons was served upon her.

The court's Commissioner recommended that appellee's petition be dismissed; that appellant be given a divorce from bed and board, and that she be given the possession of the St. Catherine Street property. Exceptions were filed to the Commissioner's report. It was the judgment of the trial court that "The plaintiff's petition is dismissed and the defendant's counterclaim is dismissed." From that judgment, the appellant prosecutes this appeal, and appellee prosecutes a cross-appeal.

Appellant contends that the trial court erred: (1) In not granting her a divorce from bed and board, and (2) in not allowing her alimony. Appellee contends that the court erred: (1) In not granting him an absolute divorce, and (2) in not adjudging him to be the owner of the two houses and lots.

Appellee has not shown himself entitled to the relief he sought. The Chancellor properly dismissed his petition. Under the facts of this case we believe that the Chancellor should have granted appellant a divorce from bed and board, and the possession of the 1656 West St. Catherine Street property, including possession of the furniture in the house, and the possession of and the income from the apartment on the back of that lot, but excluding all the tools or machinery belonging to appellee located in the garage on the back of this lot, the income from the apartment to be in lieu of alimony. She should have been adjudged her costs and an attorneys' fee of $100.

Appellant did not seek absolute divorce. A decree from bed and board does not call for restoration of property. See, KRS 403.060; Civil Code of Practice, Sec. 425; Hoagland v. Hoagland, 218 Ky. 636, 291 S. W. 1044.

The judgment of the circuit court is affirmed on the cross-appeal. Appellant's motion for an appeal is granted. The judgment of the Chancellor on the appeal is reversed with direction that a judgment be entered in conformity with this opinion.