## SPARKMAN v. SPARKMAN.

Court of Appeals of Kentucky.
March 13, 1953.

Barney W. Baker, Hazard, for appellant.
C. A. Noble, Hazard, for appellee.

SIMS, Chief Justice.

This appeal presents the question, which of the divorced parents is entitled to the custody of their three children, two boys 6 and 4 and a girl 3 years of age. The divorce judgment placed the custody of all the children in the father, and strange to say it made no provision for visitation by the mother. In June after the divorce was granted in March 1952, she moved the court to modify the judgment and grant her the custody of the children. After hearing considerable proof in open court, the chancellor modified his original judgment to the extent that the mother was given custody of all three children during November, December and January until further orders of the court, and each parent was given the privilege of visiting the children while they were in the custody of the other; and the father was ordered to pay $75 per month to the mother while the children were with her. On this appeal the mother insists she is entitled to the sole custody of the children.

The record shows the parties were married October 23, 1945. The husband entered the army and made an allotment to his wife and children of $180 per month, which was raised to $200 while he was overseas. She fell in love with another man and was anxious for a divorce but was advised by an attorney that she had no grounds upon which to sue. She refused to live with her husband as his wife when he came home on furlough, and so great was her desire for a divorce she agreed to pay the cost of the action and to give her husband $150 if he would file the suit.

The husband was then on furlough and was pressed for time as he had to return to camp within a few days, and they both went to the office of Hon. C. A. Noble, in Hazard. He prepared the petition charging the wife with such lewd and lascivious conduct as to prove her to be unchaste, and with cruel and inhuman conduct, and the petition asked the custody of the three children be awarded to the father. Immediately after preparing the petition, which Mr. Noble

testified he handed to the wife to read, he prepared her answer wherein she entered her appearance, waived notice to take depositions and agreed that the husband might immediately proceed to take his proof. She signed and verified this answer before the circuit court clerk and it was filed on February 28, 1952, immediately after the petition was filed. The next day proof was taken substantiating the averments of the petition and judgment was entered on March 1, 1952. This is one instance where there can be no complaint of the law's delay. The wife admitted she saw a copy of the judgment "on a Saturday in March," which Mr. Noble testified was on March 1, 1952, and she then complained to him that she wanted the custody of the children. Mr. Noble thereupon advised her "to see the court," which she did not do.

Not long after the divorce she married Baker, the man with whom she had been accused of "running around." It is said in appellee's brief that Baker is in the armed services and his wife has been seen in the company of other soldiers since her marriage to him. However, we fail to find in the record evidence supporting such statements, but it does show appellant advised appellee to re-enlist in the army. It is difficult to prevent the thought from running through our minds that appellant may be as much interested in the allotment, or allotments she had received, or may in the future receive, as she is in the welfare of her three children. To save all parties embarrassment, including the children as they mature, we will not discuss the evidence adduced in the record on appellant's motion to modify the last order and to obtain sole custody of her three children.

We realize the chief concern of courts in this character of case is the welfare of children. It has been written in several cases that acts of indiscretion by the wife with a man she soon married after her divorce did not brand her as a person unfit to have the custody of her children of tender years, where there was no evidence of promiscuity. See Hager v. Hager, 309 Ky. 803, 806, 219 S.W.2d 10. Evidently, the chancellor applied this rule since he modified his original judgment and gave the mother custody of her children for three months of the year. As is well known in this character of case, the chancellor is free to modify his judgment relative to the custody of children upon the change of conditions or when he thinks their welfare requires such modification. Complaint here is made of the crowded condition of the home of the parents of the husband with whom the children will live while their father is in the army. If it should develop that this home is not wholesome for these children and their welfare demands that they be placed in the custody of appellant to be cared for by her mother while appellant is working, the chancellor can again modify his order.

No more difficult question is presented to a court than the custody of small children. It is usually one of fact and calls for the application of common sense to meet a practical situation. The chancellor is usually in a better position for determining such matters than are we, especially where the parties and their witnesses appear before him, and we are not inclined to disturb his conclusion if there is no more than a doubt in our minds about it being correct. In here affirming the chancellor, we are not unmindful of the rule that custody of small children is usually given to the mother if she is a suitable person. But in the circumstances of this case, we cannot say the chancellor has erred.

A rather sharp attack is made upon Mr. Noble in brief for the speed with which he obtained this divorce and for accepting from the wife his fee when he represented her husband. True, this divorce was obtained with such speed and in such circumstances as to bring it very near, if not across, the line of collusion. As the record shows the wife had practically all the husband's money, Mr. Noble was guilty of no unethical conduct in letting her pay his fee when she well knew Mr. Noble was representing her husband. However, a lawyer always runs the risk of grave criticism when he accepts a fee from one party in a

suit to represent the opposing side.. Both the bar and the bench should scrutinize with much care a situation such as is presented by this record so as to prevent collusion in divorce actions.

The judgment is affirmed.