**Leslie Curry DUNNING, Appellant,**

v.

**Mary Effie DUNNING, Appellee.**

Court of Appeals of Kentucky.

June 19, 1959.

J. Gordon Lisanby, Princeton, for appellant.

C. R. Baker, Princeton, for appellee.

STANLEY, Commissioner.

The appellant, Leslie Curry Dunning, instituted this action for divorce against the appellee, Mrs. Mary Effie Dunning, on the grounds of abandonment for one year and habitual behavior for six months in such manner as to indicate a settled aversion to him and destroy permanently his peace and happiness. KRS 403.020(2) (a), (4) (d). The wife counterclaimed for divorce from bed and board, KRS 403.050, on the ground of cruel treatment. KRS 403.020(3) (b). The circuit court dismissed the complaint, granted the relief sought by the counterclaim and awarded the wife $150 a month and the right to occupy and use the furnishings in a residence in Eugene, Oregon. The husband

contends on the appeal that the judgment should be reversed and that he should be awarded a divorce.

The parties were married in 1922 and made their home in Princeton, Kentucky. They have had no children. When the depositions were taken in the case in the latter part of 1956, Dunning was 64 years and Mrs. Dunning 54 years of age. Dunning is a locomotive engineer. About the year 1945 he and his wife moved to Eugene, Oregon, where he secured employment as a locomotive fireman. He bought a residence and had the title placed in himself and his wife jointly with right of survivorship.

In 1951 Dunning returned to Princeton because that was his old home, and he was able to renew his work as an engineer and to protect his seniority rights. Mrs. Dunning remained in Oregon. He visited her in 1952. It is certain that in 1953 Dunning had become permanently established in Princeton. The parties differ on the point of whether the husband wanted her to return to Kentucky, as he insisted, or to stay in Oregon until such time as he retired from work, when he would go back and make that their permanent home. It appears that Mrs. Dunning had an antique shop there. During the years, Dunning deposited on an average of $250 a month to the credit of his wife in a Princeton bank, and she checked it out for her support and payments on the debt on the house in Oregon. He was earning $400 or $450 a month.

Mrs. Dunning never came back to Kentucky to live, although Dunning insisted that he was urging her to do so. During this period he lived in boarding houses and in a hotel in Princeton.

In the latter part of December, 1955, Mrs. Dunning came to Princeton. He met her in Evansville where they spent the night together and came to Princeton where she visited her people and friends in the community for about two weeks over the Christmas holidays. Visiting with her hus-

band seems to have been incidental. However, she stayed with him several nights at his hotel. She went back to Oregon and returned to the Princeton community in February or March, 1956, and stayed a few days. The parties violently differ as to whether they cohabitated as husband and wife on these occasions.

Ths husband's evidence was that on these occasions, and before, his wife had treated him with contempt, bemeaned him and accused him of running around with other women, particularly a certain woman in Princeton. When she came back there at Christmas, 1955, according to Dunning, she told him she had come back to kill him. There is corroborative evidence concerning the wife's dislike for her husband and her bad treatment of him.

In support of her defense and counterclaim, Mrs. Dunning testified that she had not abandoned her husband and that the buying and selling of antique furniture in Oregon was only a hobby and had not been profitable. In regard to his alleged misconduct, she was garrulous, most of her testimony being hearsay gossip and her own conclusions, founded on suspicions. With the incompetent testimony eliminated, there was only evidence that Dunning was seen in the named woman's automobile with her on several occasions on the streets of Princeton. Her ex-husband testified to having found a snapshot picture of Dunning and his wife in her suitcase. Dunning did not know how the woman got hold of the picture but says it was taken in front of a boarding house where both of them lived for awhile. The evidence of the boarding house and hotel keepers is that Dunning always conducted himself properly and bore a good reputation for morality and gentlemanly behavior.

The complaint was filed in August, 1956, and, as stated, sought a divorce on the ground of abandonment for one year next before its filing. An interesting question appears in the case as to whether the wife's visits and the probable cohabitation of the

parties in December, 1955, and March, 1956, broke the continuity of the abandonment alleged. See Annotation, 155 A.L.R. 132. But it is not necessary that we consider the question, for an amended complaint was filed on November 8, 1957, expressly charging abandonment by the wife on or about April 1, 1956, and its continuance thereafter.

■ We may pick up the case as if the abandonment began on April 1, 1956, and regard the evidence of antecedent relations as background or corroborative of the claim of abandonment pleaded in the amended complaint. The amendment may be regarded as an action which speaks from the time it was filed. Irwin v. Irwin, 105 Ky. 632, 49 S.W. 432; Hannan v. Hannan, Ky., 256 S.W.2d 485.

■ It is well settled that where the separation of husband and wife was by agreement, there is no legal abandonment such as will entitle one of the parties to a divorce. Sanders v. Sanders, 184 Ky. 119, 211 S.W. 425. This is so because intent is an essential element of legal abandonment. Intention is often a matter of inference and presumption based upon conduct and other circumstances, as well as declarations. Watkins v. Watkins, 202 Ky. 141, 259 S.W. 20; Graham v. Graham, 299 Ky. 543, 186 S.W.2d 186.

■ The wife's claim that there was an agreement that she should live in Oregon until her husband should join her after his retirement may have been sustainable in the beginning, but we think the evidence clearly shows that such an agreement was soon abandoned. It is certain that when Mrs. Dunning returned to Oregon after her trips to Kentucky in the latter part of 1955 and in March, 1956, any idea she may previously have had of continuing the marriage relationship had disappeared. That was more than one year before the filing of the amended complaint. 27 C.J.S. Divorce § 37. On the other side, there is nothing in the record except the complaint of abuse by her that

indicates Dunning would not have resumed the marital relationship if she had come home. He testified that he had urged her to return and she scarcely, if at all, denied that. It has been often declared to be the husband's right to select the marital domicile and the duty of a wife to live with her husband and go with him wherever he provides or is willing to provide a home for her. If she refuses to do so without justification, her refusal constitutes abandonment; and if it is continued for one year or more, the husband is entitled to a divorce on that ground. Morey v. Morey, 218 Ky. 700, 292 S.W. 332; Watkins v. Watkins, 202 Ky. 141, 259 S.W. 20; Snook v. Snook, 234 Ky. 314, 28 S.W.2d 1; Tolliver v. Tolliver, 297 Ky. 93, 179 S.W.2d 235. A wife is not justified in living elsewhere merely to satisfy her personal preference. Gallup v. Gallup, Ky., 312 S.W.2d 889.

■■ The fact that the husband recognized his responsibility to contribute to the support of his wife during the period of separation cannot be regarded as a consent to her continued absence or as condonement of her abandonment. We conclude that the court erred in refusing to grant the husband an absolute divorce.

■ A decree of divorce from bed and board is a judgment of limited separation and does not dissolve the marriage but only suspends certain mutual rights and obligations. KRS 403.050; Gentry v. Gentry, Ky., 318 S.W.2d 870. We have heretofore recognized that notwithstanding the terms of the statute which deny jurisdiction of this court to reverse a judgment of divorce, we have jurisdiction to direct that a judgment of divorce from bed and board be set aside and an absolute divorce granted. Holman v. Holman, 155 Ky. 493, 159 S.W. 937; Coleman v. Coleman, Ky., 269 S.W.2d 730.

Judgment reversed with directions to grant the appellant an absolute divorce and to make a fair adjustment of the property rights of the parties.