**Nell B. DONOHO, Appellant,**

v.

**Glen B. DONOHO, Jr., Appellee.**

Court of Appeals of Kentucky.

May 18, 1962.

Reed & Hines, Paducah, for appellant.

Emery & Carroll, Paducah, for appellee.

MOREMEN, Judge.

Appellant, Nell B. Donoho, and appellee, Glen B. Donoho, Jr., a dentist, were married at London, Ky., on June 29, 1955. Two children were born to the marriage, Glen B. Donoho III and George B. Donoho. The Donohos lived in Paducah where appellee practiced his profession. On September 15, 1960, appellant voluntarily left their home. Soon afterward Dr. Donoho filed suit for divorce on the ground that appellant had habitually behaved toward him in a cruel and inhuman manner. At that time the children were of the ages of four and two years respectively. After extensive hearings the court found that appellant was guilty of such cruel treatment toward appellee as constituted grounds for divorce, and awarded to him the custody of the two children. The mother was given visitation rights. Dr. Donoho was awarded the home property. Appellant was given the sum of $1500 in full satisfaction of any interest she may have claimed in the property. No alimony was awarded.

We have said many times that in determining the custody of infant children of divorced parties the prime consideration is the welfare of the children. A few of the later cases so saying are: Sparkman v. Sparkman, Ky., 256 S.W.2d 20; Renfro v. Renfro, Ky., 291 S.W.2d 46; Turner v. Turner, Ky., 336 S.W.2d 586. It is axiomatic that the custody of small children is usually given to the mother if she is a suitable person, Sparkman v. Sparkman, 256 S.W.2d 20, or to say it another way: the grant of custody of such children to the father is usually unnatural, but sometimes justified, Day v. Day, Ky., 347 S.W.2d 549. Some cases have indicated that before the

mother should be denied custody of her children she must be morally unfit to have their custody, Conlan v. Conlan, Ky., 293 S.W.2d 710, but denial of custody is not always placed solely on grounds of moral unfitness, Day v. Day, Ky., 347 S.W.2d 549, and Turner v. Turner, Ky., 336 S.W.2d 586. Usually when opinions speak of moral unfitness, the reference is to incontinence on the part of the wife, actions pertaining to breach of her duties as a faithful wife, lewd behavior, or other derelictions of that nature. Morality, of course, has many aspects, and is concerned with ethical principles which apply to all phases of human conduct, and is not confined solely to the rules of behavior governing the relationship between men and women.

■ The circuit court found that there was evidence which might indicate infidelity on the part of appellant or, at least, that her conduct was not above suspicion. The proof did not point unerringly to her guilt, but did disclose indiscreet actions on several occasions. We do not believe, however, that this was the major basis of the award of the children to the father. An attitude of indifference toward her children appears to have been the decisive factor.

At the time of the separation appellant was about twenty-seven years of age. The proof is certain that soon after the birth of her second child she seemed to become bored with married life and its responsibilities and gradually lost interest in the home.

At first the young couple lived in an apartment house in Paducah with which Mrs. Donoho was not content and she began to spend more and more time away from home. She would go at night to the laundrymat and bowling lanes and spend considerable time there. She would visit with her neighbors for extended periods on many nights. She complained that she was dissatisfied with the apartment in which they were living. Dr. Donoho tried to build a home, but was unable to make financial arrangements at that time. He soon purchased a home, however, which was larger·

and to their liking and for a few weeks Mrs. Donoho seemed satisfied and worked at fixing up the house. She then drifted into her old habits and began visiting her friends in the neighborhood where they formerly lived, and also began going to the bowling alley frequently. Often when appellee returned home at four-thirty or five o'clock in the afternoon she would not be there. The children would be with the maid or the baby sitter and on some occasions the doctor would find it necessary to put the children to bed and otherwise minister to them. Some witnesses testified that she went to the bowling alley five or six times a week and spent three or four hours there on each occasion—often at night.

It is not necessary to outline the complete process of deterioration of this home. All the evidence points unerringly to the fact that appellant had become bored with married life and had lost interest in her husband and in her children. This may be a temporary thing that will soon pass and perhaps if conditions do change other adjustments will be made if it is shown there has been a true reformation. Under the evidence in this record we believe the chancellor at this time had no choice but to grant custody of these children to the father. Certainly he did not abuse sound discretion in refusing under the circumstances to give the children to her.

■ We are of the opinion that the chancellor was correct in denying alimony. This case does not fall under the category of cases such as that of Coleman v. Coleman, Ky., 269 S.W.2d 730, where it was held that if the wife was not wholly at fault and was not guilty of any moral delinquency, she would be entitled to alimony although the divorce was granted to the husband. In most of these cases there was a long span of married life and for many years the wife assisted the husband to a certain measure in building up his estate. Often she had reached an age where it was too late, because of her age, for her to start a new way of living.

Further, in this action appellant counterclaimed for divorce on the ground that Dr. Donoho had treated her in a cruel and inhuman manner. In the findings of fact the court specifically made the determination that he had not subjected her to such treatment. There is nothing in the opinion which was filed in the case and made a part of the judgment, or in the judgment, that indicates Dr. Donoho was at fault in any degree.

The judgment is affirmed.