Thelma Bernadine BAILEY, Appellant,

v.

Clarence BAILEY, Appellee.

Court of Appeals of Kentucky.

Sept. 24, 1971.

Rehearing Denied Jan. 21, 1972.

C. B. Creech, Stanley R. Hogg, Creech, Hogg & Johnson, Ashland, for appellant.

Charles M. Daniels, Frank K. Warnock, Greenup, for appellee.

STEINFELD, Judge.

Appellant, Thelma Bernadine Bailey, and Appellee, Clarence E. Bailey, were married on August 8, 1960. For clarity we will refer to the parties as Bernadine and Clarence. A son and two daughters were born of this marriage. Their ages when the suit was filed in June 1967 were Todd 5, Beth Ann 3 and Brenda Sue 1. Clarence is 58 and Bernadine is 38 years of age. Sometime prior to March 9, 1965 Bernadine sued for an absolute divorce in the Boyd Circuit Court, the county in which she was then residing. On that latter date the parties contracted regarding their rights to certain property and Bernadine returned to their home in Greenup County, where they resumed their marriage relationship. Before Clarence had carried out the contractual provisions or Bernadine had dismissed her action, Clarence sued in the Greenup Circuit Court for a divorce from bed and board, custody of the children and restoration of property. Bernadine counterclaimed for an absolute divorce, custody of and maintenance for the children, alimony and property.

Trial began on June 29, 1970 and continued for several days during which numer-

ous witnesses testified for each of the parties. The court made findings of fact in which it stated that Clarence had proved his entitlement to a divorce from bed and board and to custody of the three children. It concluded that Bernadine was not entitled to a divorce but was to periodic alimony. Before judgment Bernadine moved the court to reconsider the findings and conclusions and that Honorable Oscar Sammons, Judge of the Greenup Circuit Court, vacate the bench. The motions were overruled and judgment was entered in accordance with the findings and conclusions. Bernadine appeals. We affirm.

■■■ To support the motion to vacate, she filed an affidavit, which reads in part as follows:

"It has come to the attention of the affiant in the last few days that the Hon. Oscar Sammons, Judge, Greenup Circuit Court, could not rule impartially in this case because of the conduct of the Plaintiff in this action. The Plaintiff, Clarence E. Bailey, has done, and has offered to do special favors for and has had social relationships with the presiding Judge, Hon. Oscar Sammons, to-wit: During the time this action has been pending Plaintiff had remodeled the Courthouse office or chambers now used and occupied by Judge Sammons; that the plaintiff has done considerable remodeling and decorative work on the Greenup Circuit Courtroom at a grossly inadequate figure; that the step-father of Judge Sammons' daughter-in-law was a witness for the Plaintiff; that the parties' child Beth Ann, only recently has informed affiant that she and her younger sister had been taken to the home of Judge Sammons by the Plaintiff after this case had been submitted for judgment; during the pendency of this action the plaintiff did work on the home of Judge Sammons, and Judge Sammons has stated that affiant's counsel was trying to confuse him."

The appellee responds that the motion was fatally defective because it did not show when Bernadine learned of the acts of which she complains.

A motion to require a trial judge to vacate the bench must be made before he proceeds with the cause. Harrell v. City of Middlesboro, Ky., 287 S.W.2d 614 (1956). Also " * * * it must be made at once upon discovery of the facts upon which the disqualification rests; else it will be waived." Noe v. Commonwealth, 267 Ky. 607, 103 S.W.2d 104 (1937). However, if the disqualifying information is later learned and the affidavit meets all other requirements and *clearly* shows that the movant acted expeditiously the judge must step aside. Conley v. Stivers, Ky., 445 S.W.2d 439 (1969); 48 C.J.S. Judges § 94c, 1086. Here Bernadine failed to show lack of knowledge of the information before the findings of fact and conclusions of law were entered or when she obtained it. She did not clearly demonstrate that she acted expeditiously. The motion was properly overruled. Cf. Jones v. Stivers, Ky., 447 S.W.2d 869 (1969).

■■■ Bernadine charges that the trial court erred in refusing to grant her an absolute divorce and in awarding Clarence a divorce from bed and board. Citing Dunning v. Dunning, Ky., 325 S.W.2d 315 (1959), she reminds us that we may set aside a divorce from bed and board and direct that an absolute divorce be granted. A review of the evidence discloses conflicts of gigantic proportions in the testimony presented by witnesses, some of whom were "close" to Clarence and others to Bernadine. He was described by some as a hard working, devoted husband and father and by others as an ogre. She was pictured by witnesses as a considerate wife, a dutiful mother, and a perfect lady, but others depicted her as a cruel witch. Some told that the marital difficulties were solely the fault of the wife and others stated that she was blameless and the husband was the culprit. Seldom have we seen

such divergence of opinions or observations.

The conflicting testimony impressed upon the chancellor the burden to ferret out the truth and make findings of fact. CR 52.01. These findings are of great importance to us. 7 Ky. Practices, Clay 101, Discussion 4. The trial judge personally confronted the witnesses and evaluated the evidence in a comprehensive analysis. It was apparent that several who testified were so related to the parties that their testimony was influenced by that relationship. He concluded that there were shortcomings as to both parties but that Clarence " * * * has overwhelmingly proven his case for divorce from bed and board." We find this judgment to be amply supported by the proof, and not being clearly (if at all) erroneous, we cannot disturb it. CR 52.01, Spurlin v. Spurlin, Ky., 456 S.W.2d 683 (1970).

Clarence testified that at the time he sued for a limited divorce he really did not desire one, but instead wanted to hold his family together. Bernadine argues that this admission disqualified Clarence from obtaining a divorce and made it evident that he " * * * did not feel that his peace and happiness were being permanently destroyed by any cruel and inhuman behavior on the part of Bernadine." He responds that up to the date of trial he continued to love his wife and wanted to preserve the family, that his suit was a protective measure since she had three times previously sued him for a divorce in a county that was not their residence. We find no disqualification, and ample evidence that Bernadine's acts were cruel and happiness-destroying within the meaning of our divorce laws.

And now the children; is their welfare better because they were placed in the custody of their father, rather than their mother? The Chancellor related with apparent disgust the antics of both parties, but concluded that the father, despite the handicap of the loss of both legs, should have their custody. He wrote:

"The evidence is very strong that Defendant habitually stayed in bed a large portion of the day; that the children got up early and were for the most part unattended for several hours each day; that when small, they went without having diapers changed at proper times, unless the Defendant (sic) came home from his work to care for them or hired someone else to do so. From almost babyhood, the children would have to find and prepare their own breakfast while their Mother slept, unless the Plaintiff came home from his work or unless he hired someone to prepare it for them. Often, the children, while mere babies, would get out on the streets while their Mother slept. She apparently cursed the children at any time she became aggravated with them. Her punishment of the children was spasmodic and sometimes rather severe.

"Both parties are members of the Christian Church and make a too apparent effort to prove to the Court that they are sincere. However, the Court notices that all this church going has come about since it was evident that the marriage would terminate in court action, and this Court believes that religion should extend beyond the portals of the church building, which does not seem to have occurred in this family.

"The Plaintiff has made a remarkable recovery from his accident to the extent that he walks well and performs most of the tasks required of him in his work as a building contractor. However, his work and perhaps his future earning power has been reduced to a considerable degree. He has had the children with him and has been responsible for their care during a portion of the recent separation, and there is no evidence to the effect that he has been unable to properly care for them because of his physical disability. Because of the De-

fendant's indolence in caring for the children, the Plaintiff has, during a good portion of the time, employed someone to assist in caring for them.

"However, it appears that the Plaintiff's greatest fault or failure concerning the care of his children is his over-indulgence. He is overly extravagant with them. It seems that at times he gets the idea that proper care of children is synonymous with extravagant spending of money on them. It is difficult for this Court to understand how buying mink coats for babies and taking them on extravagant vacation trips is the best method of properly rearing them."

Bernadine reminds us "There is a fundamental axiom that the custody of small children is usually given to the mother if she is a suitable person and there is no evidence of unfitness. Hinton v. Hinton, Ky., 377 S.W.2d 888; Byers v. Byers, Ky., 370 S.W.2d 193; Donoho v. Donoho, Ky., 357 S.W.2d 665; Sparkman v. Sparkman, Ky., 256 S.W.2d 20. All other considerations being equal, custody of a child of tender years, or if a girl of even more mature years, should be awarded to the mother." The Chancellor found that there was evidence of unfitness on the part of the mother and that other considerations were unequal. Possibly a few conclusions may be unsupported, as appellant contends, but the evidence as a whole sustains the trial court. The facts here are somewhat similar to those in Liles v. Liles, Ky., 432 S.W.2d 814 (1968), in which custody of young children was awarded to the father, and there we found no error. We find none here.

■ KRS 403.050 vests in the Chancellor the power to grant a divorce from bed and board for any cause which he considers sufficient. It is not a " * * * remedy for the innocent against the guilty * * * ". Grubb v. Grubb, 310 Ky. 449, 220 S.W.2d 1000 (1949). Although "A divorce from bed and board is a poor arrangement at best * * * (and) should be resorted to only in those extreme cases where there is no other adequate solution to the problem", it was not inappropriate here. Coleman v. Coleman, Ky., 269 S.W.2d 730 (1954). Clarence had not demanded an absolute divorce. We find no basis to disturb the attempted solution of what may be an insoluble problem. Bickel v. Bickel, Ky., 442 S.W.2d 575 (1969).

■ Bernadine was awarded " * * * $100.00 per week as support * * * continuing * * * until further orders of (the trial) Court", but no lump sum alimony or property.[1] The uncontradicted proof showed that Bernadine had been active in the operation of Clarence's real estate business for many years and that as a result of that business substantial wealth was accumulated and is possessed. Her counsel argues "When Clarence and Bernadine formed their 'partnership', Clarence had nothing in the way of an estate," and that Bernadine aided him in acquiring various real and personal properties, therefore under our holdings in Cooke v. Cooke, Ky., 449 S.W.2d 216 (1969) and Colley v. Colley, Ky., 460 S.W.2d 821 (1970), she wrongfully has been denied that to which she is entitled. She also relies on KRS 403.060 (2), contending that Clarence obtained property through her efforts and it must be restored to her.

Clarence responds that a limited divorce granted under KRS 403.050 "does not call for a restoration of property acquired by either spouse from the other." He relies on Hoagland v. Hoagland, 218 Ky. 636, 291 S.W. 1044 (1927), and Alderson v. Alderson, 240 Ky. 708, 42 S.W.2d 928 (1931). In Hoagland we wrote "A decree from bed and board does not call for a restoration of the property acquired by either spouse 'obtained from or through the other before or during the marriage in consideration thereof' as is prescribed by section 2121, supra of the statutes, and section 425 of the Civil

---

1. The husband did not cross appeal.

■

Code of Practice. Hoffman v. Hoffman, supra [190 Ky. 13, 226 S.W. 119], and Lewis v. Lewis, 196 Ky. 701, 245 S.W. 509." We declared that a limited divorce should be granted and that the husband should pay alimony but no division of property was directed. In Alderson we affirmed that part of the judgment which granted the wife a divorce from bed and board, but wrote "The award of $30,000 made to Mrs. Alderson cannot be sustained. The decree entered does not bar her dower or distributive right in Mr. Alderson's property. See section 2121, Ky. Stats. Any award made her should be payable monthly so that the chancellor can modify it from time to time and keep it adjusted to the condition of the parties. That clearly appears to be contemplated and provided for by section 2121, Ky. Stats." The parties in Hoagland had been married 24 years and through their joint efforts and frugality owned a small estate. In Alderson the marriage lasted only a few months and the wife contributed nothing to the large holdings of the husband.

The restoration statute was construed in Lewis v. Lewis, 196 Ky. 701, 245 S.W. 509 (1922). There the court attempted to settle property rights when the judgment decreed a divorce from bed and board. We reversed, saying "This was error for the reason that the divorce was merely from bed and board, and it is only in cases of absolute divorce that such an order or restoration is authorized by the statute and Code." We reaffirmed this position in Schultz v. Duitz, 253 Ky. 135, 69 S.W.2d 27, 92 A.L.R. 600 (1934), and in Murphy v. Murphy, 311 Ky. 431, 224 S.W.2d 695 (1949), observed "A decree from bed and board does not call for restoration of property." Also see Durbin v. Durbin, 300 Ky. 390, 189 S.W.2d 393 (1945).

Bernadine also relies on Colley v. Colley, Ky., 460 S.W.2d 821 (1970), in which we reexamined our position previously taken as to the restoration of property upon the granting of an *absolute* divorce. We said "Our case law * * * overextended the statute into coverage of property acquired by the joint efforts of both spouses during marriage." We also held Property that has been acquired by the parties' joint efforts during their marriage should be divided reasonably between the spouses. Here joint efforts resulted in the acquisition of property now in Clarence's possession.

KRS 403.050 in part provides "A divorce from bed and board shall operate as to property thereafter acquired, and upon the personal rights and legal capacities of the parties, as a divorce from the bond of matrimony, except that neither shall marry again during the life of the other, and except that it shall not bar curtesy, dower or distribute right. The judgment may be revised or set aside at any time by the court rendering it." By a judgment declaring that the parties are divorced from bed and board the marriage is not dissolved to the extent that property must be allocated under the rationale of Colley. The restoration statutes (KRS 403.060(2) and 403.065) do not apply. We see no reason to depart from our holdings in Hoagland, Alderson, Lewis, Schultz, Murphy, Durbin and similar cases.

The judgment is affirmed.

All concur, however, REED, J., concurs in result only.