**Affirmed in Part, Reversed in Part, Remanded, and Opinion filed** November 3, 2022.



In the

# Fourteenth Court of Appeals

---

### NO. 14-21-00279-CV

---

**FREDRIC N. ESHELMAN, Appellant**

**V.**

**TRUE THE VOTE, INC.; CATHERINE ENGELBRECHT; WILLIAM ENGELBRECHT; OPSEC GROUP LLC; GREGG PHILLIPS; THE BOPP LAW FIRM, P.C.; AND JAMES BOPP JR., Appellees**

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Cause No. 2021v-0015**

---

## O P I N I O N

In this appeal from the judgment granting the defendants' pleas to the jurisdiction and dismissing the case, charitable donor Fredric N. Eshelman argues that he has standing to sue a public charity for the return of his donation because the charity failed to comply with the conditions of his gift. He further maintains that even if he lacks standing to sue the charity, he has standing to sue the charity's

employees, officers, agents, and vendors, whom the charity paid using funds he donated. Five of the defendants challenged the existence of the jurisdictional facts alleged by Eshelman. Because that challenge was supported by evidence controverting Eshelman's allegations, and Eshelman failed to offer any evidence in response, the trial court properly granted the plea to the jurisdiction of those defendants. The two remaining defendants challenged only the sufficiency of Eshelman's live pleading. Because Eshelman's pleading alleged facts sufficient to affirmatively demonstrate the trial court's jurisdiction, the trial court erred in granting the jurisdictional pleas of those two defendants. Thus, we affirm in part, reverse in part, and remand the case for further proceedings.

## I. BACKGROUND

Eshelman pleaded that he contributed $2.5 million to True the Vote, Inc. ("TTV"), to fund their efforts to investigate and litigate alleged voter fraud in the 2020 presidential election, and to do so before election-certification deadlines. He spoke by phone with TTV's president Catherine Englebrecht two days after the election, and based on that conversation, he wired $2 million to TTV. Shortly thereafter, he wired TTV an additional $500,000.

According to Eshelman, Englebrecht represented that TTV intended to solicit "whistleblower" testimony, publicize the whistleblowers' stories, "galvanize Republican legislative support for voter fraud challenges in key states," "aggregate and analyze data to identify patterns of election subversion," and file federal lawsuits "in the seven closest battleground states." The lawsuits were to be filed by TTV's general counsel James Bopp Jr. and his law firm, The Bopp Law Firm. Eshelman alleged that, based upon data to be subpoenaed in those lawsuits, TTV would partner with OPSEC Group, LLC, and its principal Gregg Phillips to perform data modeling and statistical analysis to identify potentially fraudulent balloting. Eshelman further

2

alleged that his contributions were made on the condition that the funds were to be used for the TTV projects concerning the 2020 presidential election that Catherine Engelbrecht described to Eshelman. These projects came to be referred to as the "Validate the Vote 2020" initiative. Eshelman pleaded that he expressed his intent that $1 million of his contribution would be used to fund rewards for whistleblowers, $1 million "would be used for some combination of communications outreach and litigation," and the remaining $500,000 would be used to fund TTV's Validate the Vote 2020 initiative in some manner not specifically described. He alleged that TTV agreed to these conditions.

Despite Eshelman's requests for information, TTV identified no whistleblowers. He alleges that TTV filed lawsuits in four states "none of which cited any substantial evidence" of voter fraud, and that the four lawsuits were quickly and voluntarily dismissed. When he learned that TTV had dismissed its lawsuits, Eshelman demanded his money back. TTV offered to return part of the donation if Eshelman would release his claims against TTV. Eshelman refused.

Eshelman then filed and nonsuited a case in federal court before bringing this suit in an Austin County district court. Eshelman sued TTV and Catherine Englebrecht, and, alleging that payments from his conditional contributions were made to OPSEC, Phillips, Bopp, The Bopp Law Firm, and Catherine's son William Engelbrecht, Eshelman sued them as well. Against TTV, Eshelman asserted a claim for breach of contract, and he sued both TTV and Catherine Engelbrecht for fraudulent misrepresentation and negligent misrepresentation. Against all of the defendants, Eshelman asserted claims for conversion and money had and received, and he requested declaratory relief. He also asked the trial court to appoint receivers for the organizational defendants TTV, OPSEC, and The Bopp Law Firm.

All of the defendants filed pleas to the jurisdiction challenging Eshelman's standing. TTV, the Englebrechts, OPSEC, and Phillips challenged the existence of a key jurisdictional fact alleged by Eshelman, namely, that his contributions to TTV were in any way conditional. All of the defendants also argued that Eshelman's pleading does not, and cannot, show that the trial court has subject-matter jurisdiction because there is no evidence that Eshelman made his donations through a "gift instrument" expressly providing that the donations would revert to Eshelman if TTV failed to use the funds in accordance with his stated conditions. They maintain that, absent such an express written right of reverter, Eshelman lacks standing to sue the public charity TTV, and that his claims against the remaining defendants are similarly barred, being derivative of his claims against TTV.

The trial court granted all of the defendants' pleas without stating the grounds and rendered final judgment dismissing Eshelman's claims without prejudice. Eshelman appeals the ruling. In two issues, he argues that the trial court erred in granting the jurisdictional plea of TTV and of the remaining defendants.

## II. STANDARD OF REVIEW

Subject-matter jurisdiction can be challenged by a plea to the jurisdiction, and we review de novo the trial court's ruling on the plea. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

If the plea challenges the existence of jurisdictional facts, the procedure and the standard of review mirror those applicable to summary judgments. *See id.* at 228. We consider the relevant jurisdictional evidence submitted by the parties, taking as true all evidence favorable to the plaintiff, indulging all reasonable inferences and resolving all doubts in the plaintiff's favor. *Id.* After the defendant asserts and supports with evidence that the trial court lacks subject-matter jurisdiction, the burden shifts to the plaintiff to show that there is a disputed material fact concerning

4

jurisdiction. *Id.* If the jurisdictional evidence, considered in the light most favorable to the plaintiff, raises at least a question of fact as to the jurisdictional issue, then the plea must be denied, leaving the matter to be resolved by the factfinder. *Id.* at 227–28.

If the plea challenges the plaintiff's pleading, we determine if the plaintiff alleged facts affirmatively demonstrating the court's jurisdiction to hear the case. *Id.* at 226. To do so, we construe the pleading liberally in the plaintiff's favor and consider the plaintiff's intent. *Id.* If the pleading neither contains sufficient facts to affirmatively demonstrate the trial court's jurisdiction nor affirmatively demonstrates incurable jurisdictional defects, the issue is one of pleading sufficiency, and the plaintiff should be given the opportunity to amend. *Id.* at 226–27. But, if the pleading affirmatively negates jurisdiction so that the problem cannot be cured by amendment, the suit may be dismissed without giving the plaintiff an opportunity to amend. *Id.* at 227.

### III. CONDITIONAL GIFT

The defendants' pleas to the jurisdiction primarily focus on issues arising from Eshelman's characterization of his contribution to TTV as a "conditional gift." The expression "conditional gift" is something of an oxymoron, for "to constitute a gift inter vivos there must be a delivery of possession of the subject matter of the gift by the donor to the donee, and a purpose on the part of the donor to vest in the donee, *unconditionally* and immediately, the ownership of the property delivered." *Wells v. Sansing*, 151 Tex. 36, 39, 245 S.W.2d 964, 965 (1952) (emphasis added).

Unlike true gifts, "conditional gifts," also referred to as "restricted gifts,"[1] are "premised upon the fulfillment of a condition by the donee." 38 AM. JUR. 2d Gifts § 68. Generally speaking, if the donee performs the condition, then the gift becomes the donee's property; if not, then the gift must be returned. *Id.* To illustrate the concept, gifts most often characterized as "conditional" under Texas law have been those made in contemplation of marriage. *See, e.g.*, *Curtis v. Anderson*, 106 S.W.3d 251, 256 (Tex. App.—Austin 2003, pet. denied); *McLain v. Gilliam*, 389 S.W.2d 131, 132 (Tex. App.—Eastland 1965, writ ref'd n.r.e.); *Shaw v. Christie*, 160 S.W.2d 989, 991 (Tex. App.—Beaumont 1942, no writ). In that circumstance, "[a] gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and upon breach of the marriage engagement by the donee the property may be recovered by the donor." *Shaw*, 160 S.W.2d at 991.

Because of the requirement that the donee agree to the conditions placed on the donor's contribution, "conditional gifts" of personal property are sometimes characterized simply as contracts. For example, in *Douglass v. Huntress*, No. 06-17-00103-CV, 2018 WL 4224898 (Tex. App.—Texarkana Sept. 5, 2018, no pet.) (mem. op.), a mother donated most of her life savings to her son and daughter-in-law for the purchase and improvement of a home where the mother was to live with them for the rest of her life. *Id.* at *1. Less than two years later, the son and daughter-in-law demanded that the mother move out, and they sold the property. *Id.* at *3–4. They refused to reimburse the mother, maintaining that her contribution had been "a gift, without any conditions." *Id.* at *4. But, the trial court found, and the reviewing court agreed, that the mother's contributions were conditioned on the family's

---

[1] *See, e.g.*, TEX. TRANSP. CODE § 172.001(8) (specifying that a "restricted gift" is not part of the definition of "revenue" in laws governing rural rail transportation districts).

continuing to live together on the property for the remainder of the mother's life. *See id.* at \*6. The parties' agreement was therefore treated as an oral contract, and the son and daughter-in-law were held liable for its breach. *Id.* at \*5.

As between private parties, standing to sue for the return of a conditional gift upon the failure of the condition is straightforward under the general test for standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154–55 (Tex. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)) (alterations in original). So, for example, a person who gives a prospective spouse an engagement ring in contemplation of marriage has standing to sue for its return when the other party breaks the engagement.

The question of standing becomes more complicated when the recipient of a conditional gift is a public charity, also known as a "charitable trust."[2] The attorney general "is the representative of the public and is the proper party to maintain" a suit "vindicating the public's rights in connection with that charity." *Nacol v. State*, 792 S.W.2d 810, 812 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *see also* TEX. PROP. CODE § 123.002 (attorney general's participation in proceeding involving

---

[2] It is undisputed that TTV is a public charity. Consequently, TTV is considered a "charitable trust," as is any gift to it, and this case is a "proceeding involving a charitable trust." *See* TEX. PROP. CODE § 123.001(1), (2), and (3).

charitable trust). A private individual has standing to maintain a suit against a public charity only if the person seeks vindication of some "peculiar or individual rights, distinct from those of the public at large." *Lokey v. Tex. Methodist Found.*, 479 S.W.2d 260, 265 (Tex. 1972) (quoting *Carroll v. City of Beaumont*, 18 S.W.2d 813, 820 (Tex. App.—Beaumont 1929, writ ref'd)).

Eshelman contends that the conditional nature of his contribution gave him the individual right to revoke the gift for TTV's failure to abide by the conditions. The defendants argued in their pleas that Eshelman in fact attached no conditions to his gift or that his pleading of a conditional gift was incurably deficient.

## IV. CHALLENGE TO THE UNDERLYING FACTS

The parties' appellate briefing focuses on their argument that a "conditional gift" such as Eshelman has alleged requires an express, written "right of reverter," which Eshelman has not alleged. Indeed, the first subheading in the defendants' joint response brief is, "The Only Facts That Are Relevant Here Relate to Eshelman's Missing Right to Reverter, and Core Facts Prove it Missing." But, what all of the parties have overlooked on appeal—and what Eshelman appears to have overlooked in the trial court as well—is that defendants TTV, Catherine Engelbrecht, William Engelbrecht, OPSEC, and Phillips have challenged not only Eshelman's pleading, but also the existence of a crucial jurisdictional fact.

We, however, cannot overlook this ground. As the Supreme Court of Texas has stated, "if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, *as the trial court is required to do*." *Miranda*, 133 S.W.3d at 227 (emphasis added). The trial court was required to consider the challenge by five of the defendants to a key jurisdictional fact, and so must we. Eshelman does not argue on appeal that the trial court erred in granting these

8

defendants' jurisdictional pleas on this ground, and after reviewing the record and the evidence de novo, we conclude that this ground supports the trial court's ruling granting the jurisdictional pleas of these defendants.

TTV, the Engelbrechts, OPSEC, and Phillips stated in their jurisdictional pleas that Eshelman lacked "standing to sue these Defendants relating to matters that concern the contribution to a charitable organization and its operations." In the brief in support of their plea, they elaborated on this assertion, stating, "There were no particular 'strings' on the money that had been donated," and "there was never a discussion that suggested the donated funds were conditional, were contingent upon certain actions or conduct, or were subject to being revoked if True the Vote somehow failed to perform a task or was not as successful in their efforts." These assertions were supported by Catherine Engelbrecht's declaration that "there was no discussion or suggestion of any sort between Mr. Eshelman and myself, or his agents . . . and myself, that Eshelman's gift was conditional in any way." She added that "there was no communication, written or oral, where any limitation or condition was imposed on his contribution, or even discussed, or that if we did not do certain things . . . , he would be entitled to a return of his funds." The statements in this declaration contradict the allegation in Eshelman's petition that he made contributions to TTV "*on the condition* that the funds would be used to fund Defendant True the Vote's projects related to the 2020 presidential election that Defendant Englebrecht represented on the call."[3]

By this evidence, TTV, the Engelbrechts, OPSEC, and Phillips challenged the facts underlying Eshelman's position "that he, himself (rather than a third party or the public at large), suffered the injury" at issue. *Meyers v. JDC/Firethorne, Ltd.*,

---

[3] Emphasis in original.

9

548 S.W.3d 477, 485 (Tex. 2018) (quoting *Heckman*, 369 S.W.3d at 155). If, as these parties contend, Eshelman's contributions were unconditional, then he has suffered no injury distinct from that of the general public's injury from TTV's failure to dedicate at least $1 million to its whistleblower program, at least $1 million to some combination of communications outreach and litigation, and at least an additional $500,000 to these or other programs to invalidate the results of the 2020 presidential election. Because these parties produced evidence that there were no conditions on Eshelman's donation, the burden shifted to Eshelman to produce evidence sufficient to raise a genuine issue of material fact as to whether his contributions were conditional as he alleged. *See Miranda*, 133 S.W.3d at 228.

Although Eshelman filed a consolidated response to all of the defendants' pleas, he failed to support it with any evidence, instead simply referring the trial court to his live pleading. Catherine Engelbrecht's declaration is therefore uncontroverted. Because there is no evidence that Eshelman's gift was conditional, there is no evidence that Eshelman sustained a particularized injury distinct from that of any other donor or from the public at large. The trial court accordingly did not err in sustaining TTV's jurisdictional plea.

The same problem exists concerning Eshelman's claims against the Engelbrechts, OPSEC, and Phillips. All of Eshelman's claims against them are premised on his unsupported allegation that TTV did not abide by the conditions on his contribution, but the special standing requirements applicable to public charities exist not only to protect the charitable trust from harassment, but also to protect its trustees. *Coffee v. William Marsh Rice Univ.*, 403 S.W.2d 340, 347 (Tex. 1966). The standing requirement of a particularized injury distinct from that suffered by the public at large would be eviscerated if Eshelman, having failed to produce any evidence controverting Catherine Engelbrecht's declaration that Eshelman made an

unconditional gift to TTV, could circumvent that requirement by substituting claims against TTV's agents, or to its employees or contractors who received funds from the charity.

We overrule Eshelman's first issue, which pertains only to TTV, and we overrule his second issue as it pertains to Catherine Engelbrecht, William Engelbrecht, OPSEC, and Phillips.

## V. CHALLENGE TO THE SUFFICIENCY OF ESHELMAN'S PLEADING

Bopp and The Bopp Law Firm ("the Bopp Defendants") challenged only Eshelman's pleading; they did not challenge his allegation that he transferred funds to TTV on the condition that the money be used for specific purposes.[4] This is a crucial distinction, because if the movant produces no controverting evidence, we assume the plaintiff's factual allegations are true. *See Heckman*, 369 S.W.3d at 150. Thus, in our review of the trial court's granting of the Bopp Defendants' plea to the jurisdiction, we assume that Eshelman and TTV agreed that his contributions were conditioned on TTV using the funds as Eshelman directed.

The crux of the Bopp Defendants' arguments is that even if Eshelman and TTV orally agreed to his conditions, Eshelman can have no special interest in the money he donated—that is, an interest separate and distinct from the public's interest in TTV's use of its donations generally so as to support the first element of standing—unless he has "contractual standing created by way of a gift instrument" that "explicitly provide[s] that the gift was made conditionally and that [Eshelman]

---

[4] TTV, the Engelbrechts, OPSEC, and Phillips also challenged the sufficiency of Eshelman's pleading on the same ground relied upon by the Bopp Defendants, but because we have sustained the trial court's granting of their pleas based on their challenge to the underlying facts, we refer in this section only to the Bopp Defendants.

11

retains the right to reverter."[5] Because Eshelman pleaded that he and TTV had an oral agreement and he did not plead the existence of an express written right of reverter, the Bopp Defendants maintain that Eshelman has no standing to seek recovery of his contribution based on TTV's failure to abide by the agreed-upon conditions.

We have found no support for this contention in Texas law.[6] In Texas, "right

---

[5] They stated in their plea, the "Bopp Defendants also maintain that Eshelman did not make his gift conditionally, but this Plea to the Jurisdiction is based on the lack of a right to reverter." Unlike the other defendants, the Bopp Defendants presented no evidence controverting Eshelman's allegation that the gift was conditional.

[6] The only Texas source on which the Bopp Defendants rely to support their assertion of the need for an explicit, written right of reverter is an article presented in 2014 at the State Board of Texas's 12th Annual Governance of Nonprofit Organizations course. *See* Darren B. Moore & Megan C. Sanders, *Giving With Strings Attached: An Examination of Key Issues for Consideration*, STATE BAR OF TEXAS, 12TH ANNUAL GOVERNANCE OF NONPROFIT ORGANIZATIONS Ch. 9, at 7 (Aug. 21–22, 2014). The authors of the article state that a private donor's standing to sue a nonprofit "requires that the donor have a special interest in the donated gift." *Id.* (citing *Cornyn v. Fifty-Two Members of the Schoppa Family*, 70 S.W.3d 895, 899–901 (Tex. App.—Amarillo 2001, no pet.) (donors had special interest in deceased family members' brain tissue donated for Alzheimer's research)). The authors then state, "Generally, however, absent *contractual* standing created by way of a gift instrument a donor lacks standing to enforce the terms of a restricted gift because the very concept of a gift is that the donor has irrevocably parted with all rights in the gifted property." *Id.* (emphasis added). The authors cite no authority for their statement of a general rule. Moreover, they do not contend it is a rule of universal application. To the contrary, the authors acknowledge that a charity is "required to return donations when the gift is conditional and the condition fails." *Id.* at 8. This was also acknowledged in another article presented at the same seminar. *See* Brad Fletcher & Jennifer Justice, *Governance of Nonprofit Organizations: "Give It Back"*, STATE BAR OF TEXAS, 12TH ANNUAL GOVERNANCE OF NON-PROFIT ORGANIZATIONS COURSE Ch. 16, at 4 (Aug. 21–22, 2014) ("A donor can make a gift subject to a condition with such condition having the potential to cause the donee to be divested of its title in the gifted property."). *See also* 38A C.J.S. Gifts § 67 (Westlaw 2022) ("Where a party makes a gift on certain conditions and the donee violates the conditions or refuses to perform them, the donor may, in general, revoke the gift on such violation or refusal on the part of the donee."). The article on which the Bopp Defendants rely does not state, as the Bopp Defendants represented, that "[i]n order for a donor to have standing to seek return of his donation, the gift instrument must explicitly provide that the gift was made conditionally and that the donor also retains the right to reverter."

12

of reverter" is used interchangeably with "possibility of reverter,"[7] which is a term of art for "the grantor's right to fee ownership in the *real property* reverting to him if the condition terminating the determinable fee occurs." *El Dorado Land Co., L.P. v. City of McKinney*, 395 S.W.3d 798, 801 n.6 (Tex. 2013) (quoting *Luckel v. White*, 819 S.W.2d 459, 464 (Tex. 1991)) (emphasis added). Reversionary interests in real property generally are in writing because under the general statute of frauds, agreements for the sale of real property, or for the lease of real property for more than one year, are unenforceable unless the agreement, or a memorandum of it, is in a signed writing. *See* TEX. BUS. & COM. CODE § 26.01. But, the general statute of frauds does not apply to a cash contribution to a public charity, so we must look elsewhere for the source of any requirement that a donor's reversionary interest in a conditional cash gift must be memorialized in an express writing.

Nevertheless, the Bopp Defendants have not cited, and we have not found, any Texas case recognizing such a requirement or holding that a donor who has made a conditional gift to a public charity has standing to sue for recovery of the contribution upon the charity's breach of the orally agreed-upon condition only if the parties also expressly agreed in writing that the donor retained a reversionary interest in the contributed funds. Because we find no support in Texas law for the contention that such a writing is essential to Eshelman's standing to sue TTV, we cannot conclude that Eshelman must plead the existence of such a writing in order to establish his standing to sue the Bopp Defendants.

---

[7] *See, e.g.*, *ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 659 (Tex. App.—Corpus Christi–Edinburg 2016), *aff'd on other grounds*, 547 S.W.3d 858 (Tex. 2018) ("right of reverter" used in the intermediate appellate court, and "possibility of reverter" used in the Supreme Court of Texas); *BP Am. Prod. Co. v. Laddex, Ltd.*, 458 S.W.3d 683, 684 (Tex. App.—Amarillo 2015), *aff'd*, 513 S.W.3d 476 (Tex. 2017) (same).

Further, for the purpose of reviewing the trial court's grant of the Bopp Defendants' plea to the jurisdiction, we must assume the truth of Eshelman's allegation that TTV agreed that its breach of the parties' agreement to use the contributed funds solely for the "Validate the Vote 2020" project "would entitle [Eshelman] to damages in the amount of his conditional contribution at a minimum." In effect, Eshelman is suing to enforce this provision of the oral agreement. Unlike the attorney general, who has standing to represent the general public's interest in the charity's administration, Eshelman has standing to assert his private interest in enforcing his agreed-upon right to recover damages for breach of the parties' oral agreement.

Given the facts as alleged, this is so even though the causes of action he asserts against the Bopp Defendants are for conversion, declaratory relief, and for money had and received. Eshelman has alleged that Bopp is TTV's general counsel, and that Bopp provides these legal services in and through The Bopp Law Firm. Eshelman's claims against the Bopp Defendants include allegations that the Bopp Defendants received a portion of Eshelman's conditional contribution, and that their continued retention of the money is wrongful precisely because they were notified both that (1) the contribution was conditioned on its use solely for funding TTV's "Validate the Vote 2020" effort, and (2) Eshelman revoked the contribution because the money was not so used. These allegations, accepted as true, are sufficient to establish Eshelman's standing to sue the Bopp Defendants for the claims asserted.

Because we find no support in Texas law for the Bopp Defendants' contention that Eshelman was required to plead that there is a gift instrument containing an express right to reverter in order to establish standing, we conclude that the trial court erred in sustaining the Bopp Defendants' plea to the jurisdiction.

We sustain Eshelman's second issue as it pertains to the Bopp Defendants.

14

## VI. Conclusion

We affirm the portion of the trial court's judgment granting the jurisdictional pleas of TTV, Catherine Engelbrecht, William Engelbrecht, OPSEC, and Phillips, because those parties produced uncontroverted evidence that the donation to TTV was unconditional. The trial court erred, however, in granting the jurisdictional plea of the Bopp Defendants, because they challenged only Eshelman's pleading, and Eshelman alleged sufficient facts to demonstrate his standing. We accordingly reverse the portion of the judgment dismissing the claims against James Bopp Jr. and The Bopp Law Firm, and we remand the case for further proceedings.


/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain

15